RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0136p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

GREEN PARTY OF TENNESSEE; CONSTITUTION PARTY
OF TENNESSEE,

        *Plaintiffs-Appellees*,

    *v*.

TRE HARGETT, in his official capacity as Tennessee
Secretary of State; MARK GOINS, in his official
capacity as Coordinator of Elections for the State of
Tennessee,

        *Defendants-Appellants*.

No. 14-5435

———————————

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:13-cv-01128—William J. Haynes, Jr., Chief District Judge.

Decided and Filed: July 2, 2015

Before: COLE, Chief Judge; COOK and WHITE, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Janet M. Kleinfelter, OFFICE OF THE TENNESSEE ATTORNEY GENERAL,
Nashville, Tennessee, for Appellants. Alan P. Woodruff, Arden, North Carolina, for Appellees.

———————————

**OPINION**

———————————

COLE, Chief Judge. This is another challenge to Tennessee's statutes that provide ballot
access for minor political parties. Two minor parties—the Green Party of Tennessee and the
Constitution Party of Tennessee—brought suit challenging these statutes under the First and

Fourteenth Amendments. The district court granted summary judgment to plaintiffs on all claims. Defendants appeal the grant of summary judgment to plaintiffs.

This appeal presents four issues: (1) whether Tennessee's ballot-access scheme for "recognized minor parties" unconstitutionally burdens plaintiffs' First Amendment rights; (2) whether Tennessee's requirements for "recognized minor parties" to retain ballot access violate the Equal Protection Clause of the Fourteenth Amendment; (3) whether Tennessee's loyalty-oath requirement for "recognized minor parties" violates the Equal Protection Clause of the Fourteenth Amendment; and (4) whether the district court properly awarded plaintiffs a 50% fee enhancement. For the following reasons, we affirm in part and vacate in part the judgment of the district court and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

This is another case in a series of cases challenging Tennessee's ballot access statutes for minor political parties. *See Green Party of Tenn. v. Hargett*, 767 F.3d 533 (6th Cir. 2014) (hereinafter *Green Party V*); *Green Party of Tenn. v. Hargett*, 700 F.3d 816 (6th Cir. 2012) (hereinafter *Green Party IV*); *Green Party of Tenn. v. Hargett*, 7 F. Supp. 3d 772 (M.D. Tenn. 2014) (hereinafter *Green Party III*); *Green Party of Tenn. v. Hargett*, 953 F. Supp. 2d 816 (M.D. Tenn. 2013) (hereinafter *Green Party II*), *vacated and remanded*, 767 F.3d 533; *Green Party of Tenn. v. Hargett*, 882 F. Supp. 2d 959 (M.D. Tenn. 2012) (hereinafter *Green Party I*), *rev'd and remanded*, 700 F.3d 816.

### A. History of Tennessee Ballot-Access Laws

Before May 23, 2011, Tennessee recognized only one type of political party on the state's ballot, a "statewide political party," which was defined in the Tennessee Code as:

> (A)  A political party at least one (1) of whose candidates for an office to be elected by voters of the entire state in the past four (4) calendar years has received a number of votes equal to at least five percent (5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor; or
>
> (B)  For one (1) year after petitioning successfully, a political party which has a membership equal to at least two and one-half percent (2.5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor as shown by petitions to establish a political party filed with the coordinator of

elections and signed by registered voters as members of the party and certified as to registration of the signers by the county election commissions of the counties where the signers are residents.

Tenn. Code Ann. § 2-1-104(a)(30)(A) (2009) & (2010). A statewide political party was automatically entitled to have its candidates identified on the ballot by their party affiliation. *Green Party V*, 767 F.3d at 543–44. Any new party that wished to be classified as a statewide political party had to gather the signatures of registered voters equal to or greater than 2.5% of the total votes cast for gubernatorial candidates in the most recent gubernatorial election. *Id.* § 2-1-104(a)(30)(B) (2009); *see also Green Party IV*, 700 F.3d at 819.

In 2011, the Tennessee General Assembly amended the ballot-access statutes to create a new type of political party, a "recognized minor party."

(24)   "Recognized minor party" means any group or association that has successfully petitioned by filing with the coordinator of elections a petition which shall conform to requirements established by the coordinator of elections, but which must at a minimum bear the signatures of registered voters equal to at least [2.5%] of the total number of votes cast for gubernatorial candidates in the most recent election of governor . . .

Tenn. Code Ann. § 2-1-104(a)(24) (2011). In the spring of 2012, Tennessee again amended its ballot-access statutes, requiring recognized minor parties to satisfy the requirements of a statewide political party in order to maintain their status as a recognized minor party beyond the current election year:

(f)  If a petition filed pursuant to this section is determined to be sufficient by the coordinator of elections . . . , such party shall be recognized as a minor party *for all remaining primary and general elections in the current year*. To maintain recognition beyond the current election year, a minor party must meet the requirements of a statewide political party as defined in § 2-1-104. A recognized minor party who fails to meet such requirements shall cease to be a recognized minor party. Such party may regain recognition only by following the procedures for formation of a recognized minor party . . . .

Tenn. Code Ann. § 2-13-107(f) (2012).

**B. Tennessee's Current Ballot-Access Laws**

Under Tennessee's current system, political parties can obtain ballot access either as a statewide political party or a recognized minor party. "Statewide political party" is defined as

> a political party at least one (1) of whose candidates for an office to be elected by voters of the entire state in the past four (4) calendar years has received a number of votes equal to at least five percent (5%) of the total number of votes cast for gubernatorial candidates in the most recent election of governor.

Tenn. Code. Ann. § 2-1-104(a)(30) (2014). Once a party qualifies as a statewide political party, it is automatically placed on the ballot each succeeding year for four years. *Id.*

For a minor party to be placed on the ballot, it must qualify as a recognized minor party by obtaining the signatures of registered voters equal to or greater than 2.5% of the total number of votes cast for gubernatorial candidates in the last gubernatorial election. *Id.* § 2-1-104(a)(23) ("the ballot-access statute"). Additionally, "no political party may have nominees on a ballot or exercise any of the rights of political parties . . . until its officers have filed on its behalf with the secretary of state and with the coordinator of elections" an affidavit under oath stating that it does not advocate the overthrow of the government by force or violence and is not affiliated with any organization that advocates such a policy. *Id.* § 2-1-114 (2014).

To maintain its status as a recognized minor party, at least one of the recognized minor party's candidates for statewide office must receive votes totaling at least 5% of the total number of votes cast for gubernatorial candidates in the last gubernatorial election. *Id.* § 2-13-107(f) (2014) ("the ballot-retention statute"). If none of the minor party's candidates meets that threshold, it has to re-qualify as a recognized minor party to regain access to the ballot. *Id.*

**C. Procedural History**

As a result of prior litigation, plaintiffs' candidates were on the 2012 ballot (a non-gubernatorial election year) with their parties' respective names. *Green Party I*, 882 F. Supp. 2d at 1019. However, plaintiffs' candidates did not receive enough votes for plaintiffs to maintain their recognized minor party status by qualifying as a statewide political party and lost their continued ballot access in future elections. In order to regain access to the ballot, plaintiffs must

again collect the signatures of registered voters equal to or greater than 2.5% of the total number of votes cast for governor in the last gubernatorial election.

As a result of losing their status as recognized minor parties, plaintiffs filed this lawsuit on October 10, 2013, challenging various sections of the Tennessee Code. Plaintiffs brought several claims: (1) that the ballot-access statute, Section 2-1-104(a)(23),[1] and the ballot-retention statute, Section 2-13-107(f), jointly impose an unconstitutional burden on minor parties seeking status as recognized minor parties in violation of the First Amendment; (2) that the ballot-retention statute violates the Equal Protection Clause of the Fourteenth Amendment by requiring recognized minor parties to meet the 5% requirement in one year, but allowing statewide political parties to meet the same requirement in four years; and (3) that Section 2-1-114 violated their rights under the First and Fourteenth Amendments by requiring a minor or new political party to file an affidavit stating that the party does not advocate the overthrow of local, state, or national government by force or violence before its nominees are placed on the ballot.

The parties filed cross-motions for summary judgment, and on March 14, 2014, the district court held that the challenged sections of the Tennessee Code were unconstitutional and enjoined the defendants from enforcing them. The district court held that the ballot-access and ballot-retention statutes, alone and in combination, unduly burdened plaintiffs' rights under the First and Fourteenth Amendments to create and develop their political party by securing ballot access for their candidates. The district court further concluded that the ballot-retention statute violated plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment by denying plaintiffs the same four calendar years afforded to statewide political parties to secure automatic ballot access for their candidates. Finally, the district court concluded that based on longstanding Supreme Court precedent, Section 2-1-114 violated plaintiffs' First Amendment rights to free speech. *Green Party III*, 7 F. Supp. 3d at 791.

On March 21, 2014, plaintiffs filed a motion for an award of attorney's fees. The district court entered an order reducing counsel's hours by one-fifth, but increasing the award by 50% because of "the necessity of [repeated] challenges to the 2.5% ballot access requirement." *Green*

---

[1]In their complaint, plaintiffs refer to Tennessee Code Annotated § 2-1-104(a)(24) (2011). The current version is Tennessee Code Annotated § 2-1-104(a)(23) (2014). The statutes are identical.

*Party of Tenn. v. Hargett*, No. 3:13-1128, 2014 WL 1404900, at \*2 (M.D. Tenn. Apr. 10, 2014) (hereinafter *Green Party Attorney's Fees*).

Defendants appealed both the district court's order on the merits as well as its award of attorney's fees.

## II.  ANALYSIS

### A.  Standard of Review

This court reviews a district court's grant of summary judgment de novo. *Green Party V*, 767 F.3d at 542.  A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the court determines that there are genuine disputes over material facts, it must deny the motion for summary judgment.  *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013).  In making this determination, we construe the evidence "in the light most favorable to" the non-moving party.  *Id.*

### B.  Recognized Minor Party Ballot Access

#### *1.  Facial vs. As-Applied Challenge*

As a threshold issue, defendants argue that the district court erred in treating the plaintiffs' facial challenge as an as-applied challenge.  In response, plaintiffs argue that they did assert an as-applied claim.

A plaintiff can challenge the constitutionality of a statute in two ways.  "A facial challenge to a law's constitutionality is an effort to invalidate the law in each of its applications, to take the law off the books completely."  *Speet v. Schuette*, 726 F.3d 867, 871 (6th Cir. 2013) (internal quotation marks omitted).  The plaintiff must establish "'that no set of circumstances exist under which [the statute] would be valid.'"  *Id*. at 872 (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)).  In contrast, an as-applied challenge "argues that a law is unconstitutional as enforced against the plaintiffs before the court."  *Speet*, 726 F.3d at 872.  "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case

involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). In fact, a claim can have characteristics of as-applied and facial challenges: it can challenge more than just the plaintiff's particular case without seeking to strike the law in all its applications. *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). In constitutional challenges reaching beyond the plaintiff's circumstances, the plaintiff must satisfy the "standards for a facial challenge to the extent of that reach." *Id*.

Plaintiffs' complaint states the challenged Tennessee statutes impose a "severe burden on Plaintiffs and similarly situated '[r]ecognized minor parties'" and asks the court to declare the ballot-access and ballot-retention statutes unconstitutional. (Complaint, R. 1, PageID 4.) By their own terms, these statutes apply only to recognized minor parties. Invalidating the statutes for recognized minor parties would strip the statutes of each and every application they have. By challenging the statutes as applied to recognized minor parties, the plaintiffs have in effect asserted a facial challenge. If even one set of circumstances exists in which the state can constitutionally apply the statutes to recognized minor parties, plaintiffs' claim fails.

### 2. Equal Protection Clause

Defendants argue that the district court erred in finding that the retention statute violates the Equal Protection Clause by treating statewide political parties differently from recognized minor parties in that recognized minor parties are allowed only one election year to meet the threshold for a statewide political party, whereas statewide political parties retain their status for four years regardless of the election results and have four calendar years to meet the same statutory requirement.

"The Equal Protection Clause provides that 'all persons similarly situated should be treated alike.'" *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). The Supreme Court has developed a three-part test to evaluate election statutes challenged under the First and Fourteenth Amendments. *See Burdick v. Takushi*, 504 U.S. 428, 434, 441 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 788–89 (1983). While the Supreme Court has not yet applied this test to ballot-access challenges on pure equal-protection grounds, our cases hold that the *Anderson-Burdick* test serves as "a single standard for evaluating challenges to voting restrictions." *Obama for Am.*

*v. Husted*, 697 F.3d 423, 430 (6th Cir. 2012). Further, many federal courts of appeals have applied the *Anderson-Burdick* balancing test to both First Amendment and Equal Protection Clause challenges to ballot-access laws. *See e.g.*, *Rogers v. Corbett*, 468 F.3d 188, 193–94 (3d Cir. 2006) (abandoning traditional tiers of equal-protection scrutiny and applying *Anderson*); *Republican Party of Ark. v. Faulkner Cnty., Ark.*, 49 F.3d 1289, 1293 n.2 (8th Cir. 1995) ("In election cases, equal protection challenges essentially constitute a branch of the associational rights tree."); *Fulani v. Krivanek*, 973 F.2d 1539, 1543 (11th Cir. 1992) (applying the *Anderson* balancing test).

In *Green Party V*, we decided to apply the framework of *Anderson-Burdick* to a ballot-ordering equal-protection claim because "the plaintiffs' claim draws not only on the Equal Protection Clause, but also on the First Amendment:  essentially, the plaintiffs argue that they have been denied an equal opportunity to exercise their rights to association and political expression." 767 F.3d at 551. This case is markedly similar: the plaintiffs argue that the ballot-retention statute denies them an equal opportunity to exercise their rights to association and political expression. Once again, we apply the *Anderson-Burdick* test.

Under the *Anderson-Burdick* test, the court must first "consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Anderson*, 460 U.S. at 789. Second, it must "identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* Finally, it must "determine the legitimacy and strength of each of those interests" and "consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id.*

When the burden on the right to vote is "severe," the statute will be subject to strict scrutiny and must be narrowly tailored and advance a compelling state interest. *Burdick*, 504 U.S. at 434. If the burden is "reasonable" and "nondiscriminatory," the statute will be subject to rational basis and survive if the state can identify "important regulatory interests" to justify it. *See id.* If the burden lies somewhere in between, courts will "weigh[] the burden on the plaintiffs against the state's asserted interest and chosen means of pursuing it." *Green Party V*, 767 F.3d at 546.

We start by determining the burden placed on recognized minor parties. Section 2-13-107(f) requires recognized minor parties to obtain 5% of the total number of votes cast for governor in the last gubernatorial election to retain ballot access beyond the current election year. In contrast, statewide political parties are given four years to obtain the same level of electoral success. Tenn. Code Ann. § 2-1-104(a)(30). For instance, in a non-gubernatorial election, a recognized minor party and a statewide political party might each receive 3% of the votes cast for gubernatorial candidates in the gubernatorial election held two years prior. The recognized minor party would lose ballot access because it did not receive the 5% retention percentage. *See* Tenn. Code Ann. § 2-13-107(f). The statewide political party, in contrast, would retain ballot access because, by definition, it received at least 5% of the total votes cast for gubernatorial candidates in the most recent gubernatorial election. *See* Tenn. Code Ann. § 2-1-104(a)(30).

Defendants argue that statewide political parties are subject to the same one-year limitation to obtain 5% of the votes cast for gubernatorial candidates as recognized minor parties. In support, they rely on *MacBride v. Hassler*, in which the Tennessee Supreme Court stated that in order for a statewide political party to continue its ballot access it must "receive at least five per cent (5%) of the total number of votes cast for gubernatorial candidates *in the last preceding general election*." 541 S.W.2d 591, 593 (Tenn. 1976) (emphasis added).[2]

Federal courts generally defer to a state supreme court's interpretation of the state's own statutes. *See Bush v. Palm Beach Cnty. Canvassing Bd.*, 531 U.S. 70, 76 (2000). However, this single passage from *MacBride* does not stand for the proposition that statewide political parties are subject to the same statutory limitation as recognized minor parties. Earlier in the same opinion, the Tennessee Supreme Court defines a statewide political party as a "political party at least one of whose candidates for an office to be elected by voters of the entire state in the *past four (4)* calendar years has received a number of votes equal to at least five per cent (5%) of the total number of votes cast for gubernatorial candidates in *the most recent election of governor*." *MacBride*, 541 S.W.2d at 593 (quoting Tenn. Code Ann. § 2-1-104(27)) (emphasis added).

---

[2]The Tennessee Supreme Court was construing the provisions of Tennessee Code Annotated § 2-104(27), which is now Tennessee Code Annotated § 2-1-104(a)(30). The language is identical.

Taken together, it is clear that the Tennessee Supreme Court did not intend to interpret the word "four" to mean "one."

Next, we must decide the severity of the burden imposed. Because recognized minor parties must obtain 5% of the total number of votes cast for gubernatorial candidates in the last gubernatorial election to retain ballot access, we conclude that this burden is severe considering that established major parties, which have more institutional knowledge and financial resources, are given four years to obtain the same level of electoral success. Supporting the restrictive nature of this law is the fact that Tennessee amended the ballot-retention statute immediately after the district court ordered it to include plaintiffs' candidates on the 2012 general-election ballot. *See Williams*, 393 U.S. at 30 (concluding that courts "must consider the facts and circumstances behind the law.").

Even if we assume the burden is not severe, it is not justified by a sufficiently weighty state interest. Defendants argue that the burden is justified because statewide political parties are different from recognized minor parties and these differences justify the state's imposition of different burdens on them. Defendants are correct that the Supreme Court has recognized that different burdens may be justified by differences in the types of parties at issue:

> The fact is that there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other. . . . Sometimes the grossest discrimination can lie in treating things that are different as though they were exactly alike . . .

*Jenness*, 403 U.S. at 441–42. If anything, here, the differences between these two types of parties justify having less onerous burdens on recognized minor parties than statewide political parties. In *Jenness*, the Supreme Court rejected the plaintiffs' equal protection claim because Georgia made "available . . . two alternative paths, neither of which can be assumed to be inherently more burdensome than the other." 403 U.S. at 441. In other words, the Supreme Court rejected the plaintiffs' claim because the plaintiffs did not establish that the state imposed heavier burdens on minor parties. In contrast, Tennessee's ballot-retention statute clearly imposes a heavier burden on minor parties than major parties by giving minor parties less time to obtain the same level of electoral success as established parties.

Defendants note that other states enforce two-tiered election statutes, and courts consistently reject constitutional challenges to such statutes. (Appellant Br. at 18 n.4.) In these systems, minor political parties must meet or exceed a low vote percentage to access the ballot and then a higher vote percentage to retain ballot access in future elections. *See, e.g.*, Okla. Stat. Ann. §§ 1-108, 1-109 (five-percent signature requirement for ballot access and ten-percent vote requirement for ballot retention). Some states, like Tennessee, require minor political parties to meet the vote percentage for ballot retention in the first general election after they pass the ballot-access threshold. *See, e.g.*, Tenn. Code Ann. 2-13-107(f); Or. Rev. Stat. Ann. § 248.008(4)(b)(A). And in some states, minor and major political parties must obtain the same vote percentage for ballot retention. *See, e.g.*, R.I. Gen. Laws § 17-1-2(9) (major and minor parties must receive five percent of the votes cast in most recent presidential or gubernatorial election to remain on ballot). But only Tennessee's access-retention system forces minor political parties to attain the *same* vote percentage as major political parties in *less* time.

Because this statute imposes a greater burden on minor parties without a sufficient rationale put forth by the state, it violates the Equal Protection Clause. It impermissibly "freezes the status quo" and does not allow "a real and essentially equal opportunity for ballot qualification." *Am. Party of Tex. v. White*, 415 U.S. 767, 787–88 (1974). Accordingly, we affirm the grant of summary judgment to plaintiffs on their equal-protection claim.

### 3. First Amendment

Plaintiffs argue that the ballot-access and ballot-retention statutes, alone and in combination, unduly burden their rights under the First Amendment to create and develop their political parties by securing ballot access for their candidates. Because we find that the ballot-retention statute is facially unconstitutional under the Equal Protection Clause, we need not decide whether it also violates the First Amendment. Further, we decline to determine whether the ballot-access statute unduly burdens plaintiffs' associational rights, a question now before the district court following our remand in *Green Party V*. We accordingly vacate the district court's grant of summary judgment on plaintiffs' First Amendment challenge to Sections 2-1-104(a)(23) and 2-13-107(f), the access and retention statutes.

**C. Loyalty Oath Affidavits**

*1. Standing*

As a preliminary matter, defendants argue that plaintiffs lack standing to challenge the constitutionality of Tennessee Code Annotated § 2-1-114 because they cannot show an injury in fact. Under Article III of the United States Constitution, the federal judicial power extends only to "Cases" or "Controversies." U.S. Const. art. III. "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish Article III standing, plaintiffs must show (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted).

Defendants contend that plaintiffs have not demonstrated an injury in fact because there is no evidence that the statute has been, or would be, enforced. The injury in fact requirement ensures that the plaintiffs have a "personal stake in the outcome of the controversy." *Susan B. Anthony List*, 134 S. Ct. at 2341 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). To be sufficient, the injury must be "concrete and particularized" and "actual and imminent" rather than "conjectural" or "hypothetical." *Id.* A threatened injury can qualify as an injury in fact if the threatened injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013).

Plaintiffs have sufficiently established that they suffered an injury due to the Tennessee statute. While defendants have not enforced or threatened to enforce this statute against plaintiffs or any other political party, they also have not explicitly disavowed enforcing it in the future. In such situations, the Supreme Court has held that plaintiffs have standing to challenge statutes. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (holding that fear of prosecution was not imaginary or speculative where "the State has not disavowed any intention of invoking the criminal penalty provision"); *see also Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 452 (6th Cir. 2014) (holding that

plaintiff had standing where state refused to disavow the enforcement of the statute as applied to plaintiff).  We do the same here and find that plaintiffs have constitutional standing.

### 2. Merits

Plaintiffs argue that Section 2-1-114 unconstitutionally impairs their free speech rights by requiring a minor or new political party to file an affidavit stating that the party does not advocate the overthrow of local, state, or national government by force or violence before its nominees are placed on the ballot.  The Supreme Court in *Communist Party of Indiana v. Whitcomb* struck down a nearly identical statute, holding that loyalty oaths are unconstitutional and violate the First Amendment.  414 U.S. 441, 446 (1974).  The Court stated: "the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 448 (internal quotation marks omitted).  Similarly, we conclude that Section 2-1-114(1) violates plaintiffs' First Amendment right to free speech.

We note that the district court held the entirety of Tennessee Code Annotated § 2-1-114 unconstitutional.  However, Tennessee Code Annotated § 2-1-114(2) simply requires a party's rules of operation to be filed with the Tennessee Secretary of State and is unrelated to the loyalty oath requirement.  We therefore affirm the district court's grant of summary judgment as to Section 2-1-114(1) but reverse the grant of summary judgment as to Section 2-1-114(2)'s filing requirement.

### D. Attorney's Fees

Finally, defendants challenge the district court's order enhancing the plaintiffs' attorney's fees by 50% due to "the necessity of [repeated] challenges to the 2.5% ballot access requirement." *Green Party Attorney's Fees*, 2014 WL 1404900, at *2.

We review fee awards under an abuse of discretion standard.  *Paschal v. Flagstar Bank*, 297 F.3d 431, 433 (6th Cir. 2002).  "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* at 433–34 (internal quotation marks omitted).

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). However, Congress enacted 42 U.S.C. § 1988 to ensure that "federal rights are adequately enforced." *Id.* Under 42 U.S.C. § 1988(b), a district court, "[i]n any action or proceeding to enforce a provision of [section 1983] . . . , in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." To qualify as a prevailing party, a litigant must have "receive[d] at least some relief on the merits of his claim" amounting to "a court-ordered change in the *legal relationship* between the plaintiff and the defendant." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603, 604 (2001) (emphasis added). As a corollary, if a defendant voluntarily changes its behavior, the plaintiff will not be considered a prevailing party even if the plaintiff received the relief sought. *Id.* at 605. These principles still apply "when a court of appeals reverses a district court's judgment that rendered one of the litigants a prevailing party." *Green Party II*, 767 F.3d at 552. If the court of appeals reverses on the *merits*, the formerly prevailing party is no longer entitled to fees. *Id.* However, if the reversal is not on the merits, "it does not necessarily upset the prevailing party's status." *Id.*

A civil rights plaintiff need not succeed on every claim to recover attorney's fees; success on one claim can be sufficient. *Id.* If a plaintiff's "unmeritorious claims are 'based on different facts and different legal theories' than her meritorious claims, a court must treat them 'as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim[s].'" *Id.* at 552–53 (alteration in original) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989)). In contrast, if a plaintiff's unmeritorious and meritorious claims "'arise out of a common core of facts, and involve related legal theories,' a court should not exempt from its fee award the hours spent on the claims that did not succeed." *Id.* at 553 (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 789). To determine if two claims are related, a court considers "whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from" that which gave rise to the plaintiff's successful claim. *Jordan v. City of Cleveland*, 464 F.3d 584, 603 (6th Cir. 2006).

Plaintiffs qualify as prevailing parties. The district court initially held Tennessee's ballot-access scheme unconstitutional and granted declaratory and injunctive relief. On appeal, we affirmed the district court decision that Section 2-13-107(f), the retention statute, violates the Equal Protection Clause and that Section 2-1-114(1), the loyalty-oath statute, violates the First Amendment right to free speech.

Since we have determined that plaintiffs are prevailing parties, we must also determine if the district court's fee award was an abuse of discretion. First, the fact that plaintiffs have not yet succeeded on their First Amendment challenge to the ballot-access and ballot-retention statutes does not mean that the district court must reduce the fee amount because this claim "ar[o]se out of a common core of facts, and involve[d] related legal theories" as the plaintiffs' other two successful claims. *Tex. State Teachers Ass'n*, 489 U.S. at 789. Second, it was well within the district court's authority to order a fee enhancement based on a party's repeated efforts to circumvent its ruling. *Perdue*, 559 U.S. at 555 ("[A]n enhancement may be appropriate if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted."). Therefore, the district court did not abuse its discretion by awarding plaintiffs a 50% fee enhancement.

## III. CONCLUSION

For the foregoing reasons, we affirm in part and vacate in part. We affirm the district court's grant of summary judgment on plaintiffs' equal-protection challenge to the ballot-retention statute, Section 2-13-107(f), and plaintiffs' First Amendment challenge to the loyalty-oath statute, Section 2-1-114(1). We also affirm the district court's 50% fee enhancement. We vacate the district court's grant of summary judgment on plaintiffs' First Amendment challenge to Sections 2-1-104(a)(23) and 2-13-107(f), the ballot-access and ballot-retention statutes.