RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0093p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

NORTON OUTDOOR ADVERTISING, INC.,

          *Plaintiff-Appellant*,

    *v.*

VILLAGE OF ST. BERNARD, OHIO; GERALD L. STOKER,
Building Commissioner, BOARD OF ZONING APPEALS,
Village of St. Bernard, Ohio,

          *Defendants-Appellees*.

No. 23-3623

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 20-cv-00350–Michael R. Barrett, District Judge; Stephanie K. Bowman, Magistrate Judge.

Argued:  March 19, 2024

Decided and Filed:  April 19, 2024

Before:  BOGGS, MOORE, and GIBBONS, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Michael A. Galasso, ROBBINS, KELLY, PATTERSON & TUCKER, Cincinnati, Ohio, for Appellant.  Ray C. Freudiger, MARSHALL, DENNEHEY, P.C., Cincinnati, Ohio, for Appellee.  **ON BRIEF:**  Michael A. Galasso, Zachary C. Schaengold, ROBBINS, KELLY, PATTERSON & TUCKER, Cincinnati, Ohio, for Appellant.  Ray C. Freudiger, MARSHALL, DENNEHEY, P.C., Cincinnati, Ohio, for Appellee.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  Like many municipalities, the Village of St. Bernard ("Village") regulates billboards and other signs displayed within the Village limits. Norton Outdoor Advertising ("Norton") has operated billboards within the Village for decades. The Village recently revoked one of Norton's permits, however, after Norton constructed two variable-message signs.  The relevant Village ordinance regulates signs based principally on whether what is being advertised is located on or off the premises of the sign.  Under controlling Supreme Court precedent, this is a permissible, content-neutral means of regulation.  But the Village's ordinance also has an exemption that functions beyond this on- and off-premises dichotomy.  And that exemption is content based.  Accordingly, the Village ordinance must satisfy strict scrutiny.  Because the Village ordinance is not narrowly tailored to fulfill a compelling interest, it cannot stand as written.  The parties and the district court, however, have yet to consider whether the unconstitutional provision is severable.  Accordingly, we REVERSE the district court's judgment and REMAND for proceedings consistent with this opinion.

**I. BACKGROUND**

**A. The Village Ordinances**

The Village regulates signs and billboards via two chapters of its code:  Chapter 711 and Chapter 1185.  Chapter 1185 pertains to "signs."  As a threshold matter, a sign is "any writing, pictorial representation, emblem, flag or any other figure or similar character which is a structure or part thereof or is attached to or painted on or in any means represented on a building or structure; and is used to announce, direct attention to, or advertise; and is visible from outside a building."  R. 1-1 (Ordinances, Ch. 1185.001(a)) (Page ID #43).  This definition includes billboards but excludes "the flag, pennant, or insignia of any nation, state, city or other political unit, or any political, educational, charitable, philanthropic, civic, professional, religious or like campaign, drive, movement or event."  *Id.* (Page ID #43–44).

Chapter 1185 then identifies two further categories: advertising signs and business signs. An advertising sign "directs attention to a business, commodity, service or entertainment conducted, sold or offered elsewhere than on the premises where displayed or only incidentally on the premises." *Id.*, Ch. 1185.001(c) (Page ID #44). A business sign accomplishes the same but does so on the premises where the activity is located. *Id.*, Ch. 1185.001(d) (Page ID #44). The parties agree that these two categories essentially refer to those advertising a subject matter that is "on-premises," and those advertising the same "off-premises." Appellant Br. at 8; Appellee Br. at 7. One must receive a permit before installing or erecting any sign, *id.*, Ch. 1185.002 (Page ID #44), but different rules otherwise pertain to advertising and business signs and to signs that do not fall into one of these two categories, *see, e.g.*, *id.*, Chs. 1185.01, 1185.02 (Page ID #44). As far as "[e]xpressway [a]dvertising" is concerned, Chapter 1185.01(c) directs readers to Chapter 711 for "definition, rules, regulations and penalties."

Chapter 711 is titled "[e]xpressway [a]dvertising." Chapter 711.01 contains the Village's statement of intent for promulgating rules "regulating outdoor advertising signs," including reducing motorists' distractions, improving highway safety, protecting emergency responders, maintaining and improving property values, and reducing "visual blight." *Id.*, Ch. 711.01(a–e) (Page ID #41). The chapter then defines "[o]utdoor [a]dvertising [s]ign," as "any outdoor sign, display, device, figure, painting, drawing, message, placard, poster, billboard, or any other contrivance designed, intended, or used to advertise or to give information in the nature of advertising, or any part thereof, the advertising or informative contents of which are visible from the main traveled way of any highway on the Interstate system or primary system in this Village." *Id.*, Ch. 711.02(a) (Page ID #41). Exempted from this definition are "[s]igns primarily intended to promote the sale of goods, products, services, or events on the same premises as the sign"; public traffic signs; signs located on property for sale; and "[p]ublic service signs which disclose information such as time or weather." *Id.*, Ch. 711.02(a)(1–4) (Page ID #41). Outdoor advertising signs are subject to a variety of rules and regulations, but relevant here, they may not use "[m]ultiple message or variable message" displays, *id.*, Ch. 711.07(e) (Page ID #43), which

are essentially digital signs that can rotate through displayed messages, *id.*, Ch. 711.02(l), (m) (Page ID #41).**1**

## B. Norton's Permit and the Revocation

Norton sells and leases billboard space to third parties who "engage in political speech, social speech, public service speech, other forms of non-commercial speech, or commercial speech." R.1 (Compl. ¶¶ 14, 18) (Page ID #5–6). Norton operates nine outdoor advertising signs in the Village, some of which are digital billboards. *Id.* ¶¶ 17, 51 (Page ID #6, 14–15). Since the 1970s, Norton has operated a sign in the Village at 130 West Ross Avenue. *Id.* ¶ 76 (Page ID #21). Norton applied for and received a permit from the Village to convert two static sign faces at 130 West Ross Avenue to "digital display faces." *Id.* ¶¶ 76–79 (Page ID #21–22). After Norton completed construction of the updated faces, however, the Village revoked the permit, citing Chapter 711.07(e)'s ban on "[m]ultiple message or variable message outdoor advertising signs." *Id.* ¶ 80 (Page ID #22); *see also* R. 38-3 (Not. of Non-Compliance at 1–2) (Page ID #1501–02) (letter from Gerald Stoker to Steve Knapp stating that Norton received a permit to construct only an LED billboard, not a variable-message sign, and that its sign violated Chapter 711.07(e)).

## C. Procedural Background

Norton sued the Village on April 30, 2020, alleging that the Village's ordinances are unconstitutional for a variety of reasons. *See generally*, R.1 (Compl. ¶¶ 1–179) (Page ID #1–40). Between September 10, 2021, and September 13, 2021, both parties cross-moved for summary judgment. *See* R. 37 (Norton Mot. Summ. J.) (Page ID #1433–34); R. 38 (Village Mot. Summ. J.) (Page ID #1456–57). On February 16, 2022, the magistrate judge stayed the case pending the Supreme Court's resolution of *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61 (2022), because "a decision [was] expected to be issued in the near future that [was] highly likely to have a dispositive effect on the issues presented." R. 46 (February 16, 2022 Order at 1) (Page ID #1662).

---

**1**Because the parties do not suggest that the distinction matters for purposes of this appeal, we refer to these signs collectively as "variable-message signs."

After the Supreme Court decided *Austin*, the parties filed supplemental briefing addressing its import. *See* R. 49 (Village Suppl. Br.) (Page ID #1669–90); R. 50 (Norton Suppl. Br.) (Page ID #1691–1708). On June 16, 2022, the magistrate judge issued a report and recommendation, recommending that the district court grant the Village's motion for summary judgment. R. 51 (R. & R. at 1) (Page ID #1709). The magistrate judge found that Norton lacked standing to challenge any provisions of the ordinances other than Chapter 711.07(e) and accompanying provisions, *id.* at 9–20 (Page ID #1717–28); that the provisions for which Norton had standing to challenge are content-neutral regulations under *Austin*, *id.* at 10–12 (Page ID #1718–20); and that the regulations satisfied intermediate scrutiny, *id.* at 20–27 (Page ID #1728–35). Norton filed objections to the magistrate judge's report but did not object to the standing findings. R. 54 (Norton Objs.) (Page ID #1910–54); *see also* R. 63 (July 20, 2023 Order at 4 n.1) (Page ID #2149).

The district court adopted the report and recommendation in full. *See generally*, R. 63 (July 20, 2023 Order) (Page ID #2146–52). The district court agreed that Chapter 711 is content neutral under *Austin*, *id.* at 5–6 (Page ID #2150–51), and that the regulations pass intermediate scrutiny, *id.* at 6–7 (Page ID #2151–52). Norton timely filed its appeal on July 26, 2023. R. 66 (Not. of Appeal at 1–2) (Page ID #2156–57).

## II. DISCUSSION

Norton launches a barrage of attacks on the Village's sign regulations. So many, in fact, that one is left to wonder whether a more constitutionally offensive scheme could exist. *See, e.g.*, Appellant Reply at 7 (referring to the Village's sign regulations as a "caste system of speakers"). The reality is much more modest than Norton's dystopian account. Still, a single content-based exemption in the relevant ordinance calls for application of strict, rather than intermediate, scrutiny. And because the Village's regulations are not narrowly tailored to serve its stated interests, the sign ordinance cannot stand as written.

## A. Standard of Review

We review de novo a district court's grant of summary judgment. *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 187 (6th Cir. 2017). Summary judgment is proper "if

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In reviewing the district court's decision to grant summary judgment, we must view all evidence in the light most favorable to the nonmoving party." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## B. Norton's Standing

The Village's ordinances are hardly models of clarity. The parties disagree on how Chapters 1185 and 711 interact with one another, which impacts the scope of this case. As a threshold matter, the magistrate judge found, based on her reading of the two chapters, that Norton lacked standing to challenge Chapter 1185 and its definition of signs. Norton failed to object to this finding, which the district court adopted. And Norton failed to raise this issue on appeal until its reply brief. Accordingly, Norton has forfeited its challenge to the district court's standing findings. In any event, because striking down the definition of "sign" in Chapter 1185 would not redress Norton's injury, the district court did not err.

Whether Chapter 1185 bears on this dispute turns on statutory interpretation. From the outset, the parties disagree on what the definition of "sign" means in Chapter 1185. The Village suggests that what is exempted from the definition of "sign"—"the flag, pennant, or insignia of any nation, state, city or other political unit, or any political, educational, charitable, philanthropic, civic, professional, religious or like campaign, drive, movement or event" in Chapter 1185.001(a)—refers to "the type of sign, *not its content*." R. 38 (Village Mot. Summ. J. at 12) (Page ID #1471); *see also* Appellee Br. at 27 (arguing that Norton's contentions "are an unsupported attempt to twist regulations irrelevant to this appeal"). In essence, the Village contends that, even if Chapter 1185 applied to this case, it is irrelevant because Norton has not indicated that it wishes to post a physical flag. Norton, on the other hand, claims that this definition of "sign" is a broad content-based regulation that effectively exempts from all regulation promotion of content related to "current nation[s], religious organizations, or political action." Appellant Br. at 37.

Further, the parties disagree on whether Chapter 1185 even applies to this dispute. The Village argues that Chapters 1185 and 711 do not operate in tandem but instead apply to entirely different subject matters. Its view is that Chapter 1185 pertains to all types of signs, whereas Chapter 711, from which the principal regulation at issue in this case originates, pertains to an entirely different category of highway-adjacent signs that display commercial speech. R. 38 (Village Mot. Summ. J. at 9–10, 12–13) (Page ID #1468–69, 1471–72). Accordingly, Chapter 711 is the only source of the regulations and definitions relevant to this case, because "outdoor advertising signs" in Chapter 711 are not a subset of "signs" in Chapter 1185. Because the Village argued both that (1) the definition of signs in Chapter 1185 is substantially narrower than the reading urged by Norton; and (2) Chapters 711 and 1185 operate independently, the Village contended in the district court that Norton lacked standing to challenge the definition of "signs" in Chapter 1185. *See, e.g.*, *id.* at 12 n.4 (Page ID #1471).

Norton views the two chapters quite differently. On Norton's reading, Chapters 1185 and 711 must be read together, such that Chapter 711 enumerates a subset of signs covered by Chapter 1185. Thus, we would look to Chapter 1185 first to understand its basic definitions and categorization of signs and then turn to Chapter 711 for rules pertaining to a particular subset of signs: those located near an expressway. From this scheme comes what Norton refers to as "three tiers of speakers." Appellant Reply at 5. The first tier is excluded from all regulation, either by operation of the exclusions in the definition of sign in Chapter 1185, or by the exemptions to the definition of "outdoor advertising sign" in Chapter 711. *Id.* at 5–6. The second and third tiers of speakers are on-premises and off-premises signs as defined in Chapter 1185, a subset of which are "outdoor advertising signs," the most highly regulated category of signs. *Id.* at 6–7. Although Norton's briefing is replete with myriad examples of the signs it believes are exempt from regulation under this scheme, its clearest example includes "signs promoting a current nation, religious organizations, or political action." Appellant Br. at 37. Because, according to Norton, these messages are exempt from regulation, the regulations are "irrefutably content based." *Id.*

Norton's arguments miss the mark. First and foremost, Norton failed to object to the magistrate judge's finding that Norton lacks standing to challenge the definition of "sign" in

Chapter 1185, because the Village has sought to enforce only Chapter 711.07(e) by revoking Norton's permit. R. 51 (R. & R. at 17–18) (Page ID #1725–26); R. 63 (July 20, 2023 Order at 4 n.1) (Page ID #2149) (noting that Norton failed to object to the magistrate judge's standing analysis). Norton failed even to raise this issue in its opening brief on appeal, and its response in reply after the Village called attention to the forfeiture is beside the point. *See* Appellant Reply at 14–16 (arguing that Norton did not forfeit any arguments because "Norton raised the issue of content-discrimination up-front in its objections"). These two failures, one below and one on appeal, end Norton's challenge to Chapter 1185 before it can begin. *See, e.g.*, *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 714 (6th Cir. 2001) ("[O]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have." (quoting *Neuman v. Rivers*, 125 F.3d 315, 322 (6th Cir. 1997))); *Toure v. Holder*, 464 F. App'x 513, 514 (6th Cir. 2012) (per curiam) (explaining that failing to raise an argument in an opening brief constitutes a forfeiture (citing *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1154–55 (6th Cir. 2010))).

More basically, Norton's standing to challenge Chapter 1185 poses a redressability problem. Norton fails to explain how Chapter 1185, rather than Chapter 711, is the source of its injury. Norton does not deny that its proposed sign falls into the definition of "outdoor advertising sign" in Chapter 711. And its complained-of injury—denial of the ability to build a variable-message sign—stems from a regulation in Chapter 711, not Chapter 1185. Accordingly, even if we were to find that the definition of "sign" in Chapter 1185 is not content neutral, it is unclear how striking down that part of the ordinances would redress Norton's injury. *See Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 350 (6th Cir. 2007) ("Prime Media's standing with regard to the size and height requirements does not magically carry over to allow it to litigate other independent provisions of the ordinance without a separate showing of an actual injury under those provisions."); *Midwest Media Prop., L.L.C. v. Symmes Township*, 503 F.3d 456, 461 (6th Cir. 2007) (holding that plaintiffs lacked standing to bring First Amendment challenge to off-premises advertising ban because striking down ban would fail to redress injury

as signs also "plainly violated the township's size and height regulations"). We thus focus our constitutional inquiry in this case on only Chapter 711.

## C. Level of Scrutiny Applicable to Chapter 711[2]

At bottom, the level of scrutiny applicable to Chapter 711 and its regulations pertaining to outdoor advertising signs hinges on whether this case is more akin to *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), or *City of Austin v. Reagan National Advertising of Austin, LLC*, 596 U.S. 61 (2022). Norton contends that this case is akin to *Reed*, mandating application of strict scrutiny, whereas the Village argues that *Austin* controls. Because Chapter 711 contains a content-based exemption, we must apply strict scrutiny.

In *Reed*, the Court held that a town sign ordinance included content-based regulations, and thus applied strict scrutiny and struck down the ordinance. 576 U.S. at 159. The ordinance banned all display of outdoor signs, but exempted twenty-three categories of signs from the blanket ban. *Id.* Each of the twenty-three categories came with its own unique regulations. *Id.* For example, the ordinance distinguished between "[i]deological [s]ign[s]," defined as those "communicating a message or ideas for noncommercial purposes" and falling outside of other categories of sign; "[p]olitical [s]ign[s]," defined as "temporary sign[s] designed to influence the outcome of an election"; and "[t]emporary [d]irectional [s]igns [r]elating to a [q]ualifying [e]vent," which were signs "intended to direct" people to certain events held by religious, charitable, or like institutions. *Id.* at 159–61. Under the ordinance, ideological signs were the least regulated, whereas onerous regulations applied to temporary directional signs, such as

---

[2]Norton repeatedly states that it is bringing both facial and as-applied challenges in this case. All of Norton's arguments appear to be facial in nature, however, when we home in on the at-issue regulation. Norton suggests that a broad range of speech is impermissibly regulated, that Chapter 711 is always unconstitutional because its administration always requires examining the content of speech, and that the constitutional issue in this case stems from an exemption to regulation. Norton does not suggest that it, particularly, should be exempted from regulation because it meets one of the exemptions. Instead, Norton's arguments are that the Village *always* violates the Constitution by administering its code and that the Village should not be allowed to administer the provisions against *anyone*. Accordingly, although it is generally preferable to take up an as-applied challenge first, we consider the facial challenge that Chapter 711 has no constitutional application. *See, e.g.*, *United States v. Stevens*, 559 U.S. 460, 473–74 (2010) (discussing facial challenges in the unique First Amendment context); *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013) (similar); *see also, e.g.*, *Green Party of Tenn. v. Hargett*, 791 F.3d 684, 691–92 (6th Cir. 2015) (appreciating the hazy border between certain facial and as-applied challenges, and ultimately construing challenge as facial).

limits on the number of signs that could be posted, when they could be posted, how long they could be left up, and how big they could be. *Id.*

The Court began by reciting basic principles of First Amendment jurisprudence. Under the Amendment, regulations or laws that are content based—"those that target speech based on its communicative content"—are subject to strict scrutiny. *Id.* at 163. A content-based law "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* A law regulating speech may be content based "on its face," *id.*, or may be facially neutral but nonetheless promulgated "because of disagreement with the message [the speech] conveys," *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). In these scenarios, the law must pass strict scrutiny. *Reed*, 576 U.S. at 164.

The town ordinance in *Reed* was "content based on its face." *Id.* The restrictions "depend[ed] entirely on the communicative content of the sign." *Id.* In so holding, the Court rejected the government's argument that a "content-neutral justification" for different treatment could otherwise save a law that is content based on its face. *Id.* at 165; *see also id.* at 166–67 (explaining that the government's motive is relevant only if the law is content neutral on its face). The Court also explained that a law need not discriminate among viewpoints—a "more blatant" form of content regulation—in order to be content based, *id.* at 168–69 (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)); rather, regulations that differentiate among subject matters, or prohibit discussion of a topic altogether, are also content based, *id.* at 169. Ultimately, the Court in *Reed* applied strict scrutiny and struck down the ordinance, holding that it was not narrowly tailored because it was underinclusive. *Id.* at 172.

*Austin*, however, clarified that *Reed*'s import is somewhat circumscribed. The City of Austin prohibited construction of "off-premises signs"—those advertising goods or services not sold or provided on the same location as the sign. 596 U.S. at 66. The Fifth Circuit, applying *Thomas v. Bright*, 937 F.3d 721 (6th Cir. 2019), held that the ordinance was a content-based restriction, because administering the regulation necessitated reading the content of a given sign to determine what it advertised. *Austin*, 596 U.S. at 68–69. The Court found this reading of *Reed* to be "too extreme," because administering the regulation "require[d] an examination of

speech only in service of drawing neutral, location-based lines." *Id.* at 69. In other words, the regulation was "agnostic as to content," even if one needed to examine the sign to determine whether it was an on- or off-premises advertisement. *Id.*; *see also id.* at 71 ("Unlike the sign code at issue in *Reed*, however, the City's provisions at issue here do not single out any topic or subject matter for differential treatment."). This was a location-based, rather than content-based, determination. *Id.* Because strict scrutiny did not apply, the Court remanded the case for a determination of whether the ordinance passed intermediate scrutiny. *Id.* at 76–77.

Chapter 711 resists classification under either of these cases. Unlike the ordinance at issue in *Austin*, Chapter 711 does not simply differentiate between on- and off-premises signs. Rather, the chapter contains exemptions for "[s]igns primarily intended to promote" goods, services, or events on the premises where the sign is located; public traffic signs; signs located on property for sale; and "[p]ublic service signs which disclose information such as time or weather." R. 1-1 (Ordinances, Ch. 711.02(a)(1–4)) (Page ID #41). Like *Austin* and unlike *Reed*, however, the most salient distinction within Chapter 711 appears to boil down to on- versus off-premises signs, other than the exemptions for signs posted by a public authority and "[p]ublic service signs." That is, two of the exempted categories effectively pertain to different kinds of on-premises signs: signs intended to promote the sale of goods or services at the site where the sign is located, and real-estate signs located at property for sale or rent. Although Norton argues that this latter category of on-premises sign does not fit *Austin*, it offers no meaningful reason for this conclusion. The subject matter of the advertisement still undeniably relates to something on the same premises of the sign—namely, real property for sale or rent.

On appeal, Norton makes no serious argument that Chapter 711's different treatment for on- versus off-premises signs calls for application of strict scrutiny. Nor could it. *Austin* plainly holds that a regulation that does nothing more than differentiate between on- and off-premises signs is content neutral, even if one must read the content of the sign to determine whether it is an on- or off-premises sign. 596 U.S. at 69–72. Instead, the thrust of Norton's argument is that *Austin* simply does not speak to an ordinance like the Village's, which Norton contends is a series of "content-based regulations layered upon the on/off-premises dichotomy." Appellant Br. at 26.

Norton is right, but for narrower reasons than it advances. The exemption for signs posted by a public authority plainly does not call for application of strict scrutiny. Because such signs pertain to government speech, they cannot constitute content-based regulation of private speech. *See, e.g.*, *Pleasant Grove City v. Summum*, 555 U.S. 460, 481 (2009) (holding that city government's display of privately donated monuments is "best viewed as a form of government speech" and therefore "not subject to the Free Speech Clause"); *Adams Outdoor Advert. Ltd. P'ship ex rel. Adams Outdoor GP, LLC v. Pa. Dep't of Transp.*, 930 F.3d 199, 206 (3d Cir. 2019) (holding that exempting from regulation "[d]irectional or other official signs . . . erected and maintained by public officers . . . does not trigger strict scrutiny" because such signs are "forms of government speech").

But Norton uncovers a problem in the very last exemption to Chapter 711: the different treatment for "[p]ublic service signs." Chapter 711 does not define a public-service sign but states that displays of "information such as time or weather" fall within the definition, so long as such signs are not used to advertise goods, products, services, or events. R. 1-1 (Ordinances, Ch. 711.02(a)(4)) (Page ID #41). Gerald Stoker, the contractor that the Village hired to review permit applications, testified that public-service signs potentially sweep in a range of signs, including signs encouraging people to receive COVID-19 shots or those telling drivers to buckle their seatbelts. R. 32 (Stoker Dep. at 147:16–148:8) (Page ID #801–02). The Village contends that this provision cannot be content based because the public-service exemption does not pertain to advertising. Appellee Br. at 31. The magistrate judge concluded that the public-service exemption does not lead to heightened scrutiny because the regulations of outdoor advertising signs are aimed at commercial speech. R. 51 (R. & R. at 12) (Page ID #1720). Before addressing the problem posed by the exemption, we reject both the Village's and the magistrate judge's understandings of the ordinance.

The magistrate judge's view of Chapter 711 is belied by the provision's plain terms. And the Village does not argue on appeal that the definition of "outdoor advertising sign" in Chapter 711 regulates only commercial speech. Although "outdoor *advertising* sign" suggests that commercial messages are primarily at issue, nothing in its definition explicitly excludes non-commercial messages. Nor does the Village dispute that Norton advertises and promotes both

commercial and non-commercial content.  Still, Norton is nonetheless subject to Chapter 711's ban on variable-message signs.  In these respects, Chapter 711 is similar to the ordinance at issue in *Austin*.  596 U.S. at 68–69 n.3 (explaining that the at-issue provisions "admit of no exception for noncommercial speech"); *see also Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1268–69 n.15 (11th Cir. 2005) (declining to analyze sign code under standards applicable to commercial speech because code "applie[d] without distinction to signs bearing commercial and noncommercial messages").

Likewise, the Village's attempt to write the public-service exemption out of the ordinance contradicts the exemption's terms.  The definition of "outdoor advertising sign" and the exemption do not perfectly line up, contrary to the Village's view.  Outdoor advertising signs encompass any possible off-premises signs (read together with the on-premises exemptions) because they are defined as signs "used to advertise or to give information in the nature of advertising."  By its plain meaning, "advertising" covers a wide set of messages beyond simply displaying commercial messages.  *See Advertising*, MERRIAM-WEBSTER.COM, https://perma.cc/9LGE-Q8MT (last accessed March 22, 2024) (defining advertising as "the action of calling something to the attention of the public especially by paid announcements"); *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1199 (9th Cir. 2016) (construing "advertising" as "the activity of displaying a message to the public, not to any particular content that may be displayed").  This understanding is consistent with that of Gerald Stoker.  R. 32 (Stoker Dep. at 139:17–25) (Page ID #793).  The public-service-sign exemption, on the other hand, is more limited with respect to its references to advertising, stating that a public-service sign cannot be "used to advertise or promote *goods, products, services, or events*."  R. 1-1 (Ordinances, Ch. 711.02(a)(4)) (Page ID #41) (emphasis added).  Because this definition is more limited, there is a universe of signs that would be encompassed by the definition of outdoor advertising sign that is exempted by operation of the public-service-sign definition.

Therein lies the problem.  To exempt this universe of signs from the regulations pertaining to outdoor advertising signs, we must inherently look to the content of the signs. Namely, we must consider (1) whether a sign fulfills a "[p]ublic service" by "disclos[ing] information such as time or weather"; and (2) whether a sign nonetheless "advertise[s] or

promote[s] goods, products, services, or events." Because the public-service-sign exemption is just that—an exemption—its operation means that the definition of outdoor advertising sign is also content based. Although this scheme is not nearly as stratified or complex as the ordinance at issue in *Reed*, which prescribed different rules and regulations for twenty-three different categories of speech, 576 U.S. at 159, it cannot be administered by being "agnostic as to content," *Austin*, 596 U.S. at 69. No doubt, the Village is correct that much of the work of the work of Chapter 711 is accomplished in an entirely content-neutral way: by simply inquiring whether a sign pertains to activities on- or off-premises. Still, the Village must then go further when implementing the ordinances, by inquiring into whether the content displayed on an off-premises sign meets the criteria of the public-service exemption. This cannot be done in a content-neutral fashion.

One can easily envision signs that are exempted from regulation based on their content. A private individual or company could operate a variable-message sign to encourage drivers not to litter, but likely could not do the same to encourage the citizens of the Village to attend the high school softball game (an "event"). Likewise, a "click it or ticket" message encouraging seat-belt use could be displayed on changing digital billboards, but not a message encouraging citizens to be familiar with the proper uses for naloxone (a "good" or "product"). And a public-health organization might be able to post a flashing sign encouraging drivers to stay up to date on their vaccines, but the local pharmacy may be barred from doing so by encouraging drivers to receive the flu shot at its closest location. More basically, the threshold inquiry of the public-service exemption—whether the content of a given sign serves a "public service"—is laden with the types of content-based and value-judgment determinations that call for strict scrutiny under the First Amendment.[3] *See Reed*, 576 U.S. at 171 ("A regulation that targets a sign because it conveys an idea about a specific event is no less content based than a regulation that targets a sign because it conveys some other idea."); *id.* at 170 (explaining that an ordinance that requires

---

[3]Stoker's testimony also suggests (and Norton argues) that the regulations may be content based by their nature of being speaker based. *See, e.g.*, *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 658 (1994) ("Speaker-based laws demand strict scrutiny when they reflect the Government's preference for the substance of what the favored speakers have to say (or aversion to what the disfavored speakers have to say)."). We need not reach this issue because Chapter 711 is content based on its face.

determining whether a sign is "designed to influence the outcome of an election" or simply "communicating a message . . . for noncommercial purposes" is content based); *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 707–08 (6th Cir. 2020) (an ordinance is a content-based regulation if it "regulate[s] both commercial and non-commercial speech but treat[s] them differently, requiring [the jurisdiction] to consider the content of the message before deciding which treatment it should be afforded"); *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 473 (6th Cir. 2016) ("The *Reed* Court held that strict scrutiny is the appropriate level of review when a law governs any 'specific subject matter . . . even if it does not discriminate among viewpoints within that subject matter.'" (quoting *Reed*, 576 U.S. at 169)).

In this context, content-based regulations, whether they elevate or denigrate certain speech, mandate application of strict scrutiny. Although perhaps overlooked at first glance, the public-service exemption in the Village's code elevates certain speech over other speech. To determine whether a sign displays the favored speech, we must inherently consider its content. For this reason, Chapter 711 is a content-based regulation subject to strict scrutiny.

## D. Application of Strict Scrutiny

The district court erroneously found that Chapter 711 is content neutral, and thus applied only intermediate scrutiny. But the public-service exemption operates to make Chapter 711 a content-based law subject to strict scrutiny. Because the Village cannot satisfy this demanding standard, Chapter 711 cannot stand as written.

The requirements of strict scrutiny are familiar: unless a law "furthers a compelling interest and is narrowly tailored to achieve that interest," it must be struck down. *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011) (quoting *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010)). To withstand this level of scrutiny, the Village bears the burden of showing that its interests—namely aesthetics and traffic safety, Appellee Br. at 51—are compelling and that Chapter 711 is a narrowly tailored means to achieving these ends. Only a "rare case . . . survives strict scrutiny." *Susan B. Anthony List*, 814 F.3d at 474 (internal quotation marks omitted).

Unsurprisingly, Chapter 711 fails. Just as in *Reed*, we need examine only the tailoring here to hold that Chapter 711 does not satisfy strict scrutiny. And like the ordinance in *Reed*, Chapter 711 is "hopelessly underinclusive." 576 U.S. at 171. As a matter of aesthetics, public-service signs that can utilize variable messaging "create the same problem" as other outdoor advertising signs. *Id.* at 172. In other words, outdoor advertising signs utilizing variable messaging "are 'no greater an eyesore,'" yet are banned from doing so. *Id.* (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 425 (1993)). So, too, for safety: The Village "has offered no reason to believe that [outdoor advertising signs] pose a greater threat to safety than do" public-service signs. *Id.* When a municipality promulgates exceptions to a general prohibition that meaningfully undermine its stated goals, "it leaves appreciable damage to [those] supposedly vital interest[s]." *Id.* (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002)). Such appreciable damage leads to the ineluctable conclusion that the municipality has failed to tailor narrowly its regulations to accomplish its supposedly compelling interests. In other words, it fails to meet the demands of strict-scrutiny review.

## E. Severability

With the existence of a constitutional violation, we naturally turn to the question of remedy. But here the parties leave us with an issue for another day. Even when a constitutional violation exists, we do not exercise lightly our power to invalidate a law. More often, the federal courts have "a decisive preference for surgical severance rather than wholesale destruction" of a statutory scheme. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. ----, 140 S. Ct. 2335, 2350–51 (2020). The parties have not briefed on appeal whether the public-service-sign exemption is severable, such that the remainder of Chapter 711 could be left to stand under *Austin*. Below, the Village "reserve[d] the right to argue severability . . . [and] to present a severability analysis to determine whether . . . legal effect can be given to the parts [of the ordinances] which are constitutional." R. 38 (Village Mot. Summ. J. at 33) (Page ID #1492). Norton briefly argued below that the Village would fail to meet its burden on severability, because "the very essence of the [ordinances] is the use of a framework that defines regulations by content and then uses definitions to apply a myriad of exceptions." R. 42 (Norton Opp. Summ. J. at 19) (Page ID #1604).

Severability, however, is a distinct legal issue in this case meriting further thought from the parties. It is a question of Ohio state law "best resolved below" in the first instance. *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988). Because the parties have not briefed the issue of severability and the district court has yet to weigh in, we will not resolve the question of whether the remainder of Chapter 711 can survive apart from its unconstitutional exemption. *See, e.g.*, *Pratt v. United Auto., Aerospace & Agric. Implement Workers of Am., Loc. 1435*, 939 F.2d 385, 391–92 (6th Cir. 1991).

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment and REMAND for proceedings consistent with this opinion.