[Cite as *Norton Outdoor Advertising, Inc. v. Bd. of Zoning Appeals*, 2024-Ohio-5286.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| NORTON OUTDOOR ADVERTISING, INC., | : | APPEAL NO. C-230449<br>TRIAL NO. A-1900066 |
| | : | |
| Plaintiff-Appellant, | | |
| | : | *O P I N I O N* |
| vs. | | |
| | : | |
| BOARD OF ZONING APPEALS, VILLAGE OF ST. BERNARD, OHIO, | : | |
| and | : | |
| GERALD L. STOKER, | : | |
| Defendants-Appellees. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: November 6, 2024

*Robbins, Kelly, Patterson & Tucker, LPA,* and *Michael A. Galasso*, for Plaintiff-Appellant,

*Cohen, Todd, Kite & Stanford, LLC*, *Jesse E. Knowlden* and *John L. O'Shea*, for Defendants-Appellees.

**ZAYAS, Presiding Judge.**

**{¶1}** This R.C. Ch. 2506 administrative appeal concerns the trial court's review of a decision issued by appellee Village of St. Bernard Board of Zoning Appeals ("the BZA") regarding the compliance of a digital billboard—erected in the Village of St. Bernard ("the Village") by the appellant Norton Outdoor Advertising ("Norton")—with the Village of St. Bernard, Ohio, Zoning Ordinance ("the Zoning Ordinance"). The trial court affirmed the decision of the BZA, and Norton now challenges that decision. However, for the reasons that follow, we overrule the assignments of error and affirm the judgment of the trial court.

## I. Background

**{¶2}** In September 2017, Norton submitted a permit application to the Village's Department of Building and Planning to place an "LED" sign at 130 W. Ross Avenue. The application expressly provided that the sign did not pertain to business conducted on the premises. A "Com Accessory Structure" permit—permit number 2017-00116—("the permit") was subsequently issued that same month by the then Chief Building Official, Paul Myers, for an "LED sign." The permit states, "This permit is issued in accordance with, and subject to, all provisions of Ordinances and policies governing building and zoning in St. Bernard. This permit may require an inspection(s). To make an appointment to determine if an inspection is necessary, please contact us."

**{¶3}** In December 2017, Gary Stoker—acting as the new Chief Building Official—conducted a "permit" inspection at 130 W. Ross Avenue. This inspection resulted in two reports, which were ultimately issued in April 2018. Each report states, "An inspection of your property has been conducted. The following listed violation(s) are required to be corrected and/or abated no later than the compliance date here in

2

after [sic]." The first report states, "Support steel inserted into 26' hole and filled with concrete." The second report states, "26 ft. deep hole verified." Neither report mentions any violation regarding the type of sign being installed on the premises. However, each report also states, "The Village of St. Bernard assumes no liability or responsibility for failure to report violations that may exist, and makes no guarantee that violations can not [sic] occur in the future." Each report lists an inspection result of a "partial approval" of the "permit," although not expressly referencing any specific permit. Presumably, based on the surrounding record, this was regarding the permit for Norton's LED sign.

{¶4} In January 2018, Stoker sent an email to Jonathan Stuchell, the safety director for the Village, that said:

> I have researched the electronic sign and the permit issued in September 2017 for the new electronic sign, which is placed in the general location of an old existing bill board [sic] sign that was removed. This new electronic sign should have been forwarded to the Board of Zoning Appeals for approval for the use as a 'Multiple & Variable Message Sign.'
>
> This [sic] type of signs are not permitted unless a variance is granted by the Board of Zoning Appeals.
>
> I have chatted with the owner of the property 'Author Leesman' and the owner of the sign 'Norton' and they were unaware of the issue, but both are very willing to work with St. Bernard to meet our guidelines and apply for a variance.
>
> . . .

St. Bernard has not performed a final inspection on the sign and will not final [sic] the permit until we work through the current variance issues.

{¶5} On February 2, 2018, Stuchell emailed Stoker after a meeting about the sign and said:

Thanks for asking about the meeting but it was highly annoying during the audience participation portion. I basically reported what you emailed me but the people wanted to know who was responsible so I told them that Paul was. I said this would have definitely been the end for him and reassured everyone that this would not happen again. We need to make sure that the property owners are notified of the meeting and I would like for both of us to be there because this was such an outrageous screwup by the BDP. Whatever is done I would like for you to be involved because I have my doubts how this went down. Paying for your guidance is well worth it to me and how you have handled this was impressive. So Yes [sic], let's move forward with the BZA.

Stoker responded to the email, saying he would start the process for setting the public hearing and contact Norton and the property owner.

{¶6} On February 28, 2018, Norton, through counsel, sent a letter to Stoker which indicated that it was a written response to a request that Norton apply for a variance. The letter pointed to Section 711.06 of the Expressway Advertising Chapter of the Business Regulation Code—Chapter 711—and argued that the sign was only required to comply with federal and state regulations, which it did, so they were "at a loss" as to why a variance would be needed.

4

{¶7}   An email a few days later from Stoker to Stuchell indicated that Stoker was working with Norton in an attempt to reach "a resolution to this situation." However, no such resolution was apparently reached as, on March 22, 2018, Stoker issued a "Notice of Non-Compliance with the Village of St. Bernard Zoning Code" ("the noncompliance notice") to Norton regarding the September 2017 permit.   Among other things, the noncompliance notice said:

> The building and zoning permit was issued per your completed application submitted on September 8, 2017, which only noted that the project was for the construction of an LED sign.
>
> An on-site inspection reveals that you have installed a Multiple Message Advertising Device and Variable Message Sign, for which an approval by the Village of St. Bernard was never granted and is prohibited per Standards for Outdoor Advertising Signs section 711.07(e).

The noncompliance notice also indicated an issue with an illumination provision of Chapter 711, but that issue is not a subject of this appeal.  The noncompliance notice concluded with the following order: "You are hereby requested to deactivate the multiple message advertising and variable message component of the sign upon receipt of this letter and ensure that it remains deactivated until such time that a variance has been granted by the Village of St. Bernard Board of Zoning Appeals."

{¶8}   Norton, through counsel, sent a letter to Stoker in response to the noncompliance notice on April 2, 2018.  The letter first expressed that it was inaccurate to say that the Village did not have notice of the type of sign erected under the permit as detailed plans were submitted with the permit application.  The letter then said that Norton was working on a variance application, as requested, but also

5

asserted that the Village ordinances did not provide the authority to issue a variance where a permit was already issued and did not indicate that a variance application was necessary in this circumstance. Lastly, the letter asserted that the Village's interpretation of the zoning code, if accurate, was unconstitutional. The letter requested an in-person meeting to assess whether the matter could be resolved.

{¶9} The record reflects that the parties arranged to meet about the sign on April 24, 2018. The record also shows that Stoker emailed the Village's zoning map to counsel for Norton on April 25, 2018.

{¶10} Nevertheless, on July 20, 2018, Stoker issued a "Legal Notice of Violation" ("the violation notice") to Norton, asserting that Norton failed to comply with the noncompliance notice and was therefore in violation of Section 1125.07 of the Zoning Ordinance. The violation notice ordered that Norton deactivate the multiple message advertising and variable message component of the sign and said that the failure to comply with the order would result in penalties under Section 1125.99 of the Zoning Ordinance. The violation notice also provided that an appeal could be made to the BZA.

{¶11} Norton appealed the violation notice to the BZA on August 9, 2018. The notice of appeal asserted five grounds for the appeal: (1) there was no violation of Section 1125.07 as that provision did not include the term "structure," (2) Chapter 711 of the Business Code was not included in the Zoning Ordinance as Section 1185.01 only refers to expressway advertising, which is not defined anywhere in Chapter 711, (3) the sign complies with Section 711.06, (4) the plans submitted with the permit application "clearly" stated that the sign was a "digital display," and a "digital sign face," and therefore the Village was on notice that the sign was a digital display when it issued

6

the permit, and (5) a complete ban on digital signs would be an unconstitutional content-based restriction on free speech.

{¶12} In response to the appeal, Stoker sent an "Interoffice Memorandum" to the BZA on September 23, 2018. Among other things, the memorandum included a "Current Condition" section that said, "The Billboard sign is currently erected and functioning, however, the billboard sign has never received a final inspection and Certificate of Completion due to the fact that it is in violation of the Village [of] St. Bernard's Zoning Code as referenced in the Legal Notice of Violation Order dated June [sic] 20, 2018."

{¶13} A public hearing was held on November 19, 2018, to address Norton's appeal of the violation notice.[1] A transcript of this hearing is not included in the record. However, the meeting minutes are included. The minutes reflect that Steve Knapp from Norton appeared as a witness for Norton in favor of the appeal, while other property owners near the premises appeared in opposition to the appeal.

{¶14} Ultimately, the BZA unanimously voted to deny Norton's appeal and affirm the violation notice at the regular meeting on December 10, 2018. A transcript of this hearing is not included in the record, and the meeting minutes do not reflect any analysis of this decision. The decision was communicated to Norton in a subsequent letter on December 18, 2018. The letter also does not contain any analysis. It only states that the BZA "conducted a public & regular meeting in accordance with

---

[1] We note that a public hearing was first held on October 8, 2018, but Norton requested at this hearing that the matter be rescheduled to November to allow Norton time "to diligently work towards a path for a solution to the current zoning issues, which may require a zoning variance." The record reflects that Norton did apply for a variance on November 14, 2018. However, the variance application was subsequently withdrawn by Norton on February 8, 2019, prior to the scheduled hearing on the variance.

its regulations, reviewed all information that was submitted, listened to all testimony and deliberated."

## II. The R.C. Ch. 2506 Appeal

{¶15} On January 4, 2019, Norton filed a notice of appeal from the decision of the BZA in the Hamilton County Court of Common Pleas pursuant to R.C. Ch. 2506. The appeal ultimately concerned two issues: (1) whether there was a violation of Section 1125.07 of the Zoning Ordinance, and (2) whether the Village's codified ordinances were unconstitutional.

{¶16} Regarding the first issue, Norton presented arguments substantially similar to certain, but not all, arguments presented to the BZA: (1) Chapter 711 of the Business Regulation Code is not included in the Zoning Ordinance, (2) Section 1125.07 of the Zoning Ordinance does not apply to "structures," and (3) the sign nevertheless complies with Chapter 711 of the Business Regulation Code. Accordingly, Norton requested that the trial court reverse the decision of the BZA and find that the BZA's interpretation of Section 1125.07 was "unreasonable, unlawful, and unsupported by a preponderance of substantial, reliable, and probative evidence on the record."

{¶17} In response to the first issue, the BZA argued that (1) Chapter 711 was incorporated into the Zoning Ordinance through Section 1185.01, (2) Section 1125.07 plainly applies to signs, even though the provision does not expressly refer to "structures," and (3) the sign does not comply with Section 711.07 of the Business Regulation Code.

{¶18} Regarding the second issue, Norton argued that "the Village's ordinances seek to completely ban multiple message and variable message outdoor advertising signs while permitting such signs for on-premise content, which is unconstitutional because such a ban is a content-based restriction on free speech

rights guaranteed by the First Amendment to the U.S. Constitution and Article I, Section 11 of the Ohio Constitution." Consequently, Norton asserted, that "[on] its face, [Section] 711.07 is an unconstitutional restraint on free speech because it applies greater protection to commercial speech than it does to non-commercial speech."

{¶19} In response to the second issue, the BZA argued that the ordinances were constitutional as they "merely restricted certain messages to a single-message sign," and thus do not "suppress any expression."

{¶20} After further briefing and oral arguments by the parties, the magistrate ultimately determined that the BZA's decision was "not arbitrary, capricious, or unreasonable, and [was] fully supported by a preponderance of the evidence," and "the St. Bernard Ordinances which Norton was cited for violating are not a restriction on Norton's free speech rights under the First Amendment to the United States Constitution and Article I, Section II of the Ohio Constitution." More specifically, in the magistrate's issued findings of fact and conclusions of law, the magistrate made the following conclusions of law: (1) Section 1185.01 of the Zoning Ordinance incorporates Chapter 711 into the Zoning Ordinance, (2) the BZA's determination that Norton violated Section 1125.07 of the Zoning Ordinance by violating Section 711.07(e) "is not arbitrary, capricious, illegal or unreasonable, and is fully supported by a preponderance of the evidence of record," and (3) the ordinances "as applied to the billboards in question are not restrictions on Norton's free speech rights under either the First Amendment to the United States Constitution or Article I, Section II of the Ohio Constitution as the Ordinances do not control the content of the advertising on Norton's billboard."

{¶21} Norton filed objections to the magistrate's decision, stating that it "objects to the parts of the Magistrate's decision which: (1) failed to apply the proper

standard of construction applicable to a zoning ordinance by upholding an improper interpretation and application of the zoning ordinance in a manner [that] bans variable signs which display certain content; [and] (2) failed to conduct the applicable constitutional analysis required by the Revised Code as to whether a content-based restriction of speech is constitutional."

{¶22} After further briefing and a stay to await the United States Supreme Court's decision in *City of Austin v. Reagan Natl. Advertising of Austin, LLC*, 596 U.S. 61 (2022), the trial court ultimately overruled Norton's objections and "affirmed" the magistrate's decision. In doing so, it expressly stated that it was doing "two levels of review" by reviewing the magistrate's decision under Civ.R. 53(D)(4)(d) and the underlying administrative decision pursuant to R.C. 2506.04. Regarding the first objection, the trial court found that (1) Section 1185.01 "expressly incorporates the definitions, rules, regulations, and penalties in Chapter 711 into the Zoning Ordinance," (2) the Zoning Ordinance is unambiguous, and (3) Norton violated it. Regarding the second objection, the trial court found that it was without jurisdiction to address a facial constitutional challenge to the ordinances and said that "in reality" Norton was seeking "a general declaration of the unconstitutionality of the pertinent sections of the ordinance."

{¶23} Norton now appeals, raising two assignments of error. In its first assignment of error, Norton argues, "The Village's decision was unlawful." In its second assignment of error, Norton argues, "The trial court's decision regarding the constitutionality of the Village Ordinances was erroneous."

### III. Law and Analysis

### A. Standard of Review

{¶24} "R.C. Chapter 2506 governs appeals to the court of common pleas from final orders of administrative officers and agencies of political subdivisions, including municipal boards of zoning appeals." *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 2014-Ohio-4809, ¶ 22. "R.C. 2506.04 governs the standard of review the trial court must apply in such an appeal." *Id.* "It provides that 'the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record.'" *Id.* "Thus, R.C. Chapter 2506 confers on the common pleas courts the power to examine the whole record, make factual and legal determinations, and reverse the board's decision if it is not supported by a preponderance of substantial, reliable, and probative evidence." *Id.* at ¶ 24, citing *Dudukovich v. Housing Auth.*, 58 Ohio St.2d 202, 207 (1979).

{¶25} "The statute further provides that the court's judgment may be appealed by any party to the court of appeals 'on questions of law.'" *Id.* at ¶ 22. Thus, the court of appeals has a limited function. *Id.* at ¶ 23, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984). "[T]he standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance." *Id.* at ¶ 30. "It permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Id.*

{¶26} The court of appeals does not have the same power to weigh the evidence. *Id.* at ¶ 25, citing *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147 (2000). It may only review the judgment of the court of common pleas on questions of law. *Id.* "'The application of [a statute] to the facts is a "question of

law"—[a]n issue to be decided by the judge, concerning the application or interpretation of the law.'" (Citations omitted.) *Id.*

## B. First Assignment of Error

{¶27} In its first assignment of error, Norton challenges the trial court's decision to uphold the BZA's determination that Stoker correctly issued a violation of Section 1125.07 of the Zoning Ordinance.

{¶28} Section 1125.07 of the Zoning Ordinance provides, "It shall be unlawful to locate, erect, construct, reconstruct, enlarge, change, maintain or use any, building or land in violation of any of the provisions of this Zoning Ordinance, or any amendment or supplement thereto adopted by Council."

{¶29} The notice of violation alleged that Norton violated Section 1125.07 by failing to comply with Section 711.07(e) of the Business Regulation Code.

{¶30} Section 711.07(e) provides, "Multiple message or variable message outdoor advertising signs are not permitted."

{¶31} In this regard, the magistrate made three particularly important findings: (1) Norton did not challenge the characterization of its signs as being multiple message or variable message outdoor advertising signs at the BZA hearing; (2) Section 1185.01 of the Zoning Ordinance incorporated Chapter 711 of the Business Regulation Code into the Zoning Ordinance by reference; and (3) the decision of the BZA that Norton violated Section 1125.07 by its violation of Section 711.07(e) is not arbitrary, capricious, illegal or unreasonable, and is fully supported by a preponderance of the evidence of record.

{¶32} Importantly, in its objections to the trial court, Norton did not challenge the magistrate's factual finding that it failed to challenge the characterization of its

sign as being a multiple message or variable message outdoor advertising sign at the BZA hearing.

{¶33} The trial court subsequently "affirmed" the magistrate's decision. In doing so, it expressly agreed with the magistrate that Section 1185.01 incorporated Chapter 711 of the Business Regulation Code into the Zoning Ordinance. Further, it found that the Zoning Ordinance was unambiguous and Norton "was in violation of it."

## 1. Norton Waived Any Argument that Stoker Was Not Authorized to Issue the Violation Notice

{¶34} Norton first argues that the trial court erred in its analysis as the violation notice and the subsequent proceedings were undertaken without statutory authority where the notice was not issued by the law director or the director of public service and safety. In response, the BZA argues that Norton waived this argument as it did not argue below—either to the BZA or to the trial court—that the Village lacked the authority to issue the notice or take any subsequent actions relating to the sign. In reply, Norton points to its notice of appeal to the BZA and argues that the issue is preserved since it "made it abundantly clear that issues related to Ordinance Chapter 711 were far outside the scope of Ordinance 1125.07."

{¶35} In reviewing the arguments made to the BZA—to the extent that the record permits—and to the trial court, the BZA is correct that Norton failed to make any argument to the trial court that the violation notice was improper because Stoker lacked the authority to issue it, and there is also no indication in the record that this argument was ever raised to the BZA. While Norton did argue that Chapter 711 of the Business Regulation Code was not included within the Zoning Ordinance, the argument was limited to asserting that the notice of violation was accordingly

13

improper since there would be no violation of Section 1125.07 of the Zoning Ordinance even if there was a violation of Chapter 711. Consequently, because Norton failed to make this argument below, we hold that Norton waived the argument for purposes of appeal to this court, and we therefore decline to address it.

## 2. Section 1125.07 is Applicable

{¶36} Norton next argues that the Village did not have the authority to take adverse action under Section 1125.07 because the sign is not "land" or "buildings."

{¶37} The BZA argues that Section 1125.07 explicitly prohibits the use of "land" in violation of the Zoning Ordinance and installing a sign in violation of the Zoning Ordinance is using the land in violation of Section 1125.07.

{¶38} Section 1125.07 provides, "*It shall be unlawful to* locate, erect, construct, reconstruct, enlarge, change, maintain or *use any*, building or *land in violation of any of the provisions of this Zoning Ordinance*, or any amendment or supplement thereto adopted by Council." (Emphasis added.)

{¶39} Section 1123.80 defines "use," as "*the purpose* for which land or a building or structure is arranged, designed or intended, or *for which* either *land* or a building or structure *is, or may be occupied or maintained*." (Emphasis added.) Thus, "use" is defined to include the purpose for which land may be occupied or maintained.

{¶40} Reading these provisions together, it is unlawful under Section 1125.07 for land to be occupied or maintained for a purpose in violation of any provision of the zoning code. This would include land being occupied by or maintained for a sign in violation of the zoning code. Thus, using land to erect or construct a sign in violation of the Zoning Ordinance is prohibited. Accordingly, Norton's argument that Section 1125.07 is inapplicable because the sign itself is not "land" is not persuasive.

14

Therefore, we hold that the trial court did not err in finding that Section 1125.07 was applicable. Accordingly, we overrule this portion of the first assignment of error and affirm the judgment of the trial court on this issue.

### 3. Chapter 711 Is Subject to the Zoning Ordinance

{¶41} Norton further argues that the trial court erred in finding that Chapter 1185 of the Zoning Ordinance incorporates Chapter 711 of the Business Regulation Code into the Zoning Ordinance.

{¶42} The BZA argues that the Zoning Ordinance is defined in Section 1121.01 to include Title Nine of the Village's Codified Ordinances, and Title Nine includes Chapter 1185 regulating "signs," which includes Subsection 1185.01(c) that references—and thereby incorporates—Chapter 711 for "definition, rules, regulations, and penalties."

{¶43} In analyzing zoning ordinances, two principles must be kept in mind. *Cleveland Clinic*, 2014-Ohio-4809, at ¶ 33. First, "zoning ordinances are to be construed in favor of the property owner because they are in derogation of the common law and deprive the proper owner of uses to which the owner would otherwise be entitled." *Id.* at ¶ 34, citing *Univ. Circle, Inc. v. Cleveland*, 56 Ohio St.2d 180, 184 (1978). Thus, ordinances "must be strictly construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed." (Citations omitted.) *Id.* In other words, zoning limitations "by implication" are not permitted. *Id.*, citing *Henley*, 90 Ohio St.3d at 152. Second, when applying a zoning provision, the provision should not be read in isolation. *Id.* at ¶ 35. Instead, "its 'meaning should be derived from a reading of the provision taken in the context of the entire ordinance.'" *Id.*, citing *Henley* at 152.

**{¶44}** To start, Section 1121.01 provides that the Zoning Ordinance consists of Titles Five (Zoning Administration), Seven (Zoning Districts), and Nine (Zoning General Provisions) of Part Eleven (Planning and Zoning Code) of the Village's Codified Ordinances. Thus, the Zoning Ordinance generally does not include the Business Regulation Code, which is Part Seven of the Village's Codified Ordinances. Nevertheless, the trial court—and presumably the BZA—found that Chapter 711 of the Business Regulation Code was incorporated by reference into the Zoning Ordinance under Subsection 1185.01(c).

**{¶45}** Chapter 1185 of the Zoning Ordinance governs signs. It includes a broad definition of a "sign," as well as other more specific definitions and sections concerning different types of signs, such as "advertising signs" or "business signs." *See* St. Bernard Cod.Ord. 1185.001 – 1185.07. Relevant for our purposes here, an "advertising sign" is defined as "a sign which directs attention to a business, commodity, service or entertainment conducted, sold or offered elsewhere than on the premises where displayed or only incidentally on the premises." St. Bernard Cod.Ord. 1185.001(c).

**{¶46}** Beyond that, section 1185.01—not to be confused with the previously mentioned Section 1185.001—specifically governs "advertising signs" and provides certain requirements and restrictions for "advertising signs." Significantly, subsection (c) of Section 1185.01—the subsection at issue in this case—refers the reader to Chapter 711 of the Village's Codified Ordinances for "Expressway Advertising." It states, "Expressway Advertising. Please refer to Chapter 711 of these Codified Ordinances for definition, rules, regulations and penalties." St. Bernard Cod.Ord. 1185.01(c).

**{¶47}** Following in line with its incorporation under subsection 1185.01(c), Chapter 711 is entitled, "Expressway Advertising." The first section discusses the intent of Chapter 711 and says, "The Village of St. Bernard intends and desires this

Chapter, regulating *outdoor advertising signs*, to be enforced to achieve [purposes (a)-(e)]." St. Bernard Cod.Ord. 711.01. Thus, tying the two chapters together, Chapter 711 regulates a specific subset of advertising signs under Chapter 1185: outdoor advertising signs.

{¶48} A comparison of the definition of an "outdoor advertising sign" under Section 711.02(a) and the definition of an "advertising sign" under Section 1185.001(c) confirms that outdoor advertising signs under Chapter 711 are simply a subset of advertising signs under Chapter 1185. Section 711.02(a) defines an "outdoor advertising sign" to include signs and billboards—among other things—that are "designed, intended, or used to advertise or to give information in the nature of advertising, or any part thereof, the advertising or informative contents of which are visible from the main traveled way of any highway on the Interstate system or primary system in this Village," with certain expressly listed exceptions, one of which includes signs that are primarily intended to promote goods, products, services, or events on the same premises as the sign. Thus, consistent with the title of Chapter 711 (Expressway Advertising), "outdoor advertising signs" are advertising signs that are "visible from the main traveled way of any highway on the Interstate system or primary system in the Village." For the purposes of connecting the chapters as indicated in Section 1185.01(c), the visibility of the sign from a main traveled way is the only notable difference between the two definitions. Other than that, the definitions are complementary to each other, each regulating advertising signs that promote goods or services that are off premises from where the sign is located. Thus, "outdoor advertising signs" are simply a specific subset of "advertising signs."

{¶49} Beyond that, a review of Chapter 711 as a whole reveals that, consistent with its express intent, Chapter 711 indeed provides the "definition, rules, regulations,

and penalties" for an "outdoor advertising sign," as indicated in Section 1185.01(c).  In fact, the entirety of Chapter 711 is dependent and focused upon the definition of an "outdoor advertising sign."  First, Section 711.01 provides the intent of the chapter, as already discussed above.  Section 711.02 then provides the relevant definitions for the chapter, including the definition of an outdoor advertising sign.  Section 711.03 then provides the "General Standards" for "[a]ll outdoor advertising signs."  Section 711.04 then provides "Outdoor Advertising Sign Certificate Requirements."  Section 711.05 governs nonconforming "outdoor advertising signs."  Section 711.06 then provides the applicable standards for an "advertising device," which would seem to be included as a subset of an "outdoor advertising sign" based on the definition as "devices" are expressly listed within the definition of an "outdoor advertising sign."  *See* St. Bernard Cod.Ord. 711.02.  Section 711.07 then provides the "Standards for Outdoor Advertising Signs."  Lastly, Section 711.08 governs "Enforcement," including penalties, for outdoor advertising signs.  Thus, it is clear from a review of the chapter that Chapter 711 provides the "definition, rules, regulations, and penalties" for an "outdoor advertising sign," i.e., expressway advertising, as indicated in Section 1185.01(c).

{¶50}  Consequently, Section 1185.01(c) plainly incorporates Chapter 711 into the Zoning Ordinance.  This is further confirmed by Section 711.04(a) that states, "Zoning Certificate Required.  Unless expressly exempted, no *outdoor advertising sign* shall be erected, constructed, permanently enlarged, expanded, materially altered, relocated or reconstructed *unless a signed zoning certificate evidencing the compliance of said sign with the provisions of this chapter* shall have first been issued *by the Zoning Inspector*."  (Emphasis added.)  Thus, Section 711.04(a) expressly states that the Zoning Inspector is charged with ensuring that outdoor advertising signs are erected or constructed—among other things—in compliance with Chapter 711.

18

Further, Section 1185.001(c) states, "Advertising Signs on any premises can only be permitted by the Zoning Board of Appeals." *Id.* Given that "outdoor advertising signs" under Chapter 711 are an incorporated subset of "advertising signs" under Chapter 1185, it is clear that Chapter 711 is enforceable under the Zoning Ordinance.

{¶51} Accordingly, based on all the foregoing, we hold that the plain language of the ordinances shows that the trial court did not err in finding that Chapter 711 was incorporated into the Zoning Ordinance through Section 1185.01(c). The trial court reached such a conclusion by strictly construing the ordinances at issue and imposing only those limitations that were clearly prescribed. The trial court did not impose zoning limitations by implication. Therefore, we overrule this portion of the first assignment of error and affirm the judgment of the trial court on this issue.

### 4. Section 711.07 is Applicable to Norton's Sign

{¶52} Additionally, Norton argues that the trial court misapplied Section 711.06. Norton asserts that the sign is only regulated by Section 711.06, and not Section 711.07, as 711.06 "exempts certain billboards" from Section 711.07, thereby abrogating such billboards from all regulation except state and federal regulations.

{¶53} The BZA argues that the billboard is regulated by both 711.06 and 711.07 as the Village is allowed to impose greater restrictions on billboards than state and federal regulations do.

{¶54} Section 711.06, entitled "Applicable Standards," provides, "When an advertising device is erected which is visible from two or more highways, one or more of which is an Interstate[,] requirements applicable to Interstate Highways shall apply."

{¶55} Section 711.07 then sets forth the general "standards" for "outdoor advertising signs," setting forth certain restrictions and requirements.

19

**{¶56}** Reviewing the two provisions together, we see nothing to support Norton's argument that Section 711.06 somehow makes Section 711.07 inapplicable to outdoor advertising signs visible from two or more highways. Nothing within Section 711.06 exempts an "advertising device" that is "visible from two or more highways" from the standards of Section 711.07 if such a device also meets the definition of an "outdoor advertising sign." In this case, Norton does not argue that its sign does not meet the definition of an "outdoor advertising sign." Consequently, we see no reason to find error in the trial court's finding that Section 711.07 is applicable to the sign in addition to Section 711.06.

**{¶57}** After this case was submitted for a decision, Norton filed a notice of supplemental authority, asking this court to consider the Ninth District's recent decision in *Senuta v. Boston Twp.*, 2024-Ohio-4661 (9th Dist.). In *Senuta*, the court considered whether the general law of Ohio—specifically, R.C. 519.20 and certain Ohio Department of Transportation regulations—preempted certain township zoning regulations that prohibited the use of signs in certain situations. *Id.* at ¶ 12-25. The court ultimately held that the township regulations were preempted under Ohio law. *Id.* at ¶ 18, 21, 25.

**{¶58}** Norton argues that *Senuta* is "particularly relevant" to its argument that only Section 711.06 is applicable to the sign, and not Section 711.07. However, a review of the record reveals that Norton did not present any sort of preemption argument in the trial court. Rather, Norton's argument was limited to an argument that the plain language of Section 711.06 itself prevented the applicability of Section 711.07. Norton never raised any argument that 711.07 was preempted by the general law of Ohio. Consequently, given our very limited standard of review in this case, we decline to address this argument as it was not raised in the trial court.

**{¶59}** For all the foregoing reasons, we overrule this portion of the first assignment of error and affirm the judgment of the trial court on this issue.

### 5. Norton Waived Any Argument that the Sign is Not a "Multiple Message or Variable Message Outdoor Advertising Sign" under Section 711.07(e)

**{¶60}** Norton finally argues that Section 711.07 does not prohibit its sign as, although it prohibits "multiple message or variable message outdoor advertising signs," it does not prohibit a "multiple message advertising device" or "variable message sign."

**{¶61}** However, the magistrate expressly found that Norton failed to dispute that its sign was a "multiple message or variable message outdoor advertising sign" in front of the BZA and Norton never challenged this finding in its objections to the magistrate's decision. Consequently, this argument is waived, and we decline to address it. Civ.R. 53(D)(3)(b)(iv).

### 6. Conclusion on the First Assignment of Error

**{¶62}** Based on all the foregoing, we overrule the first assignment of error and affirm the judgment of the trial court upholding the BZA's determination that Stoker correctly issued a violation of Section 1125.07 of the Zoning Ordinance.

### C. Second Assignment of Error

**{¶63}** In its second assignment of error, Norton argues that the trial court erred by failing to make the Village show that its ordinances met constitutional scrutiny instead of relying on a nonfinal decision—a decision of the United States District Court for the Southern District of Ohio, Western Division, concerning the same parties and the same ordinances—that incorporated and weighed facts outside of the administrative record.

**{¶64}** As mentioned above, when addressing Norton's constitutional argument on objections from the magistrate's decision, the trial court found that it was without jurisdiction to address a facial constitutional challenge to the ordinances and said that "in reality" Norton was seeking a general declaration of the unconstitutionality of the ordinances. However, as an alternative finding, the trial court continued on to address the facial challenge and, in doing so, the court said, "In support of this holding the court adopts the reasoning set forth in the Report and Recommendation issued by Magistrate Judge Bowman in the related, federal case *Norton Outdoor Advertising, Inc. v. Village of St. Bernard, Ohio, et al.,* Case No. 1:20-cv-350, United States District Court, Southern District of Ohio, Western Division." In other words, the trial court relied on the federal district court's decision only for its alternative finding when addressing Norton's constitutional argument.[2]

**{¶65}** Importantly, Norton does not challenge the trial court's initial finding that Norton was "in reality" seeking a general declaration of the unconstitutionality of the pertinent sections of the zoning ordinance so it was without jurisdiction to address the constitutional argument. Thus, Norton does not present any argument for why the trial court's controlling finding on this issue was made in error.

**{¶66}** As pointed out by the BZA, this court has said, "The Court of Common Pleas has no jurisdiction in a Chapter 2506 appeal to enter a general declaration as to

---

[2] We note that the district court's decision has since been reversed by the Sixth Circuit in *Norton Outdoor Advertising, Inc. v. Village of St. Bernard,* 99 F.4th 840 (6th Cir. 2024). In the Sixth Circuit's decision, the court declared Chapter 711 unconstitutional as written, reversed the district court's decision, and remanded the matter for a determination of whether the unconstitutional provision can be severed, such that the remainder of Chapter 711 can stand under *City of Austin,* 596 U.S. 61. *Id.* at 2, 28-29. Upon notice of this decision, this court ordered the parties to submit supplemental briefing as to the impact of the Sixth Circuit's decision on this court's ability to decide the instant appeal. After supplemental briefing was complete, this court considered the issue and decided that, based on the authority of *State v. Roberts,* 93 Ohio St.3d 419 (2001), the Sixth Circuit's decision has no impact on this court's ability to decide the issues before us. Further, both parties expressly asked this court to proceed with the appeal without awaiting a final determination from the federal courts. Consequently, we address the issues presented to us in this appeal, notwithstanding the Sixth Circuit's decision.

the constitutionality of an entire ordinance (or major parts thereof)." *Jerks Socks, Inc. v. Village of Woodlawn*, 1977 Ohio App. LEXIS 9285, *5 (1st Dist. Oct. 12, 1997). In fact, it is well established that a facial constitutional challenge to a zoning ordinance is improper in the context of an administrative appeal. *See, e.g., Fulton v. Bd. of Zoning Appeals*, 2017-Ohio-971, ¶ 8-9 (8th Dist.); *Steiner v. Morrison*, 2016-Ohio-4798, ¶ 9-11 (7th Dist.).

{¶67} Because Norton does not challenge the trial court's initial finding that it was seeking a general declaration of the unconstitutionality of the ordinance and because R.C. Ch. 2506 appeals are not the appropriate vessel in which to present a facial constitutional challenge to an ordinance, we cannot find error in the trial court's controlling determination that it was without jurisdiction to address Norton's constitutional challenge. Therefore, we need not reach any issue regarding the trial court's alternative finding that addresses the constitutional issue on the merits by relying on the district court's decision. Consequently, we overrule the second assignment of error and affirm the judgment of the trial court regarding its jurisdiction to address the constitutional issue presented to it.

## IV. Conclusion

{¶68} For all the foregoing reasons, we overrule the assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

CROUSE, J., concurs.
KINSLEY, J., concurs separately.

KINSLEY, J., concurring separately.

{¶69} On the briefing, the record, and the law before us, I agree that the trial court's decision affirming the decision of the BZA should be upheld. This result is

particularly compelled by two factors: 1) the fact that Norton's counsel did not raise and preserve its most meritorious argument: that Norton's sign constitutes a protected nonconforming sign under the Village's sign regulations, and 2) the reality that our deferential standard of review in R.C. Ch. 2506 administrative appeals precludes de novo review of this issue. *See Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 2014-Ohio-4809, ¶ 30 ("In sum, the standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance. It permits reversal only when the common pleas court errs in its application or interpretation of the law . . . ."). I write separately, however, because the law would have compelled the opposite result had Norton's counsel merely identified and raised the issue of nonconformity.[3]

**{¶70}** In 2017, Norton sought and obtained a permit from the Village of St. Bernard to replace its existing static billboard along Interstate 75 with an LED digital sign. In support of its permit application, Norton submitted detailed architectural drawings indicating that the sign would contain digital facing and displays. On September 20, 2017, the Village issued a permit to Norton for the project in accordance with its building and zoning regulations.[4] The permit indicated it was for an LED sign valued at $80,000, although the record reveals that Norton ultimately spent approximately $400,000 on the project. In addition, Norton paid $925.46 to the

---

[3] The law may also have been on Norton's side, as it implied with its notice of supplemental authority, had it raised the issue of preemption as well. *See Senuta v. Boston Twp.*, 2024-Ohio-4661 (9th Dist.).

[4] The trial court found the permit to be solely a building permit. This is plainly incorrect. By its very terms, the permit on its face indicates that it is both a building *and* a zoning permit. But Norton did not challenge this finding on appeal, and we are therefore powerless to undo the trial court's mistake. *See Cleveland Clinic Found.*, 2014-Ohio-4809, at ¶ 25 (noting that appellate courts lack the power in an R.C. Ch. 2506 appeal to "weigh the evidence"); *Toledo's Great Eastern Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.*, 24 Ohio St.3d 198, 202 (1986) ("a court of appeals need only pass upon errors assigned and briefed; errors not specifically raised may be disregarded").

Village for the permit itself. Norton therefore expended considerable financial resources in reliance upon the permit it received.

**{¶71}** By indicating in its permit application its intention to erect an LED digital billboard, Norton placed the Village on notice that its sign would constitute a "variable message sign" as defined by Chapter 711.02(m) of the Business Regulation Code. That provision defines a "variable message sign" as one "whose message is partially changed by electronic process or remote control, including, but not limited to . . . messages changed by turning lights on and off." It also placed the Village on notice that its sign would constitute a "multiple message advertising device," similarly defined by Chapter 711.02(l) as "an advertising device whose sign face either partially or wholly changes by . . . electronic process."

**{¶72}** Chapter 711.07(e) appears to prohibit both multiple message and variable message outdoor advertising signs in the Village.[5] Nonetheless, the Village issued the permit, and Norton installed the billboard.

**{¶73}** Shortly after it did so, the Village's chief building official inspected the sign. The permit indicated that an inspection may be required, so the inspection was not unanticipated. In his December 12, 2017 inspection report, the chief building official noted just one violation: the need for a 26-foot hole with support steel to be filled with concrete. Later that same day, the chief building official issued a subsequent inspection report noting the 26-foot hole had been verified. Neither

---

[5] In making this observation, I assume that the distinction between the term "multiple message advertising *device*" in Chapter 711.02(m) and "multiple message . . . advertising *signs*" in Chapter 711.07(e) is merely a typographical drafting error. It is possible, however, that the Village intended to draw a distinction between devices and signs, and that multiple message advertising devices are not actually prohibited. Because that distinction is immaterial to the resolution of this case, given that Norton's sign plainly constitutes a "variable message sign," the question of whether signs are different from devices is one for another day.

inspection report referenced the digital nature of the sign or Chapter 711.07(e)'s prohibition on multiple or variable message outdoor advertising signs.

**{¶74}** Norton therefore established its use of land consistent with a permit from the Village.

**{¶75}** In January of 2018, after the sign was erected in accordance with the permit, the chief building official admitted in an internal email that his decision was in error. He indicated that the matter should have been referred to the BZA because the sign was prohibited under Chapter 711.07(e). He further suggested that Norton could have sought a variance to excuse compliance with that provision.

**{¶76}** Consistent with the chief building official's concessions, the Village notified Norton in writing on March 21, 2018, that it was in violation of Chapter 711.07(e)'s prohibition. And on July 20, 2018, the Village issued a formal notice of violation to Norton under Chapter 1125 of its Zoning Ordinances. The notice alleged that, despite the issuance of a building and zoning permit, Norton's sign was in violation of Chapter 711.07(e)'s ban on variable and mixed message outdoor advertising signs. It further ordered Norton to deactivate the sign, indicating that its failure to do so would be punishable under Chapter 1125 as a misdemeanor criminal offense by up to a $100 daily fine and subject to civil remedies including an injunction.

**{¶77}** Norton appealed to the BZA. But in doing so, Norton's counsel failed to raise the impact of Chapter 711.05 on the legality of Norton's LED billboard. Entitled "Non-Conforming Signs," this section of the Village's Code of Ordinances authorizes the existence of signs pursuant to a permit that do not otherwise comply with specific sign regulations. Subsection (c) of this Chapter reads as follows:

> All permits and approvals issued by the Village of St. Bernard for
> the erection and maintenance of existing outdoor advertising signs

along I-75 shall be deemed to have been validly issued and given, notwithstanding any Village ordinances relating to required setback of outdoor advertising signs along I-75 or prohibiting freestanding outdoor advertising signs, or any other Village ordinances, to the contrary.

{¶78} The plain language of this text squarely covers Norton's permit. Norton maintained an existing billboard in the Village. It was issued a permit to erect a new digital display on that billboard. Its sign was along I-75. While the digital nature of its display makes it noncompliant with Chapter 711.02(e), subsection (c) deems the permit valid notwithstanding the requirements of that provision. Subsection (c) therefore protects Norton's sign as a nonconforming use.

{¶79} The right to the continued use of one's property as a nonconforming use is one of constitutional dimensions. *See Akron v. Chapman*, 160 Ohio St. 382 (1953), paragraph two of the syllabus. Remarkably, however, this argument appears nowhere in Norton's briefing. In its appeal to the BZA, it argued that "the Village was on notice that [its] permit application was for a digital display sign" and that "[Norton] should not be prejudiced if the Village issued the permit in error." But in doing so it did not cite to Chapter 711.05(c), nor did it raise the issue of nonconformity. And it wholly abandoned this argument when it challenged the BZA's decision in court, neither advancing a factual argument as to what the Village knew about the digital nature of the sign nor arguing the impact of Chapter 711.05(c) on the legality of the sign.

{¶80} In the absence of a preserved issue to resolve, our strict standard of review prohibits our consideration of this question of law. *See Cleveland Clinic Found.*, 2014-Ohio-4809, at ¶ 30; *Toledo's Great Eastern Shoppers City, Inc.*, 24 Ohio St.3d at 202. Had the issue been properly argued, however, it would have resulted in

Norton prevailing in this appeal. The outcome in this case is therefore wholly driven by Norton's failure to preserve a nonconformity argument under Chapter 711.05(c).

{¶81} Norton's counsel also did not raise a significant issue that impacts the Village's remedies in this dispute. The Village's notice of violation, which the BZA and the trial court upheld, imposes penalties under Chapter 1125. These include an order to deactivate the sign with the threat of criminal punishment and an injunction if the order is not obeyed. But Chapter 1125 remedies do not apply here. Chapter 711's do. This is the case because Chapter 1185.01(c), which regulates expressway advertising signs, indicates that Chapter 711 governs "definition, rules, regulations, *and penalties*" for signs along the interstate.

{¶82} Chapter 711.08(c) limits the penalty for violations of the sign regulations to a $1,000 daily fine. Unlike Chapter 1125, this provision excludes criminal enforcement mechanisms and injunctive relief. Thus, even if Norton's sign were not protected by Chapter 711.05(c) as a nonconforming use, the sole relief available to the Village is to impose a $1,000 daily fine. It may not order Norton to deactivate the sign, and it may not threaten criminal enforcement.

{¶83} But again Norton's counsel did not bring this issue to the attention of anyone in the case. Not the BZA, not the trial court, not this court. And we are therefore precluded by our stringent standard of review from reaching the result that the Village's ordinances clearly compel. *See Cleveland Clinic Found.*, 2014-Ohio-4809, at ¶ 30; *Toledo's Great Eastern Shoppers City, Inc.*, 24 Ohio St.3d at 202. That would not have been the case had Norton simply raised the argument.

{¶84} I also note that our entire decision in this appeal presupposes the constitutional enforceability of Chapter 711, a question upon which we do not directly opine. This is the case because Norton elected to simultaneously litigate the

28

constitutionality of Chapter 711 in both an administrative appeal in state court and a 42 U.S.C. 1983 suit in federal court without filing an *England* reservation, which would designate the federal court as the forum for these claims.[6] *See, e.g., Stotts v. Pierson*, 976 F.Supp.2d 948, 977-978 (S.D. Ohio 2014) (explaining purpose and application of *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411 (1964), in the context of simultaneous BZA administrative appeal and federal First Amendment lawsuit).

{¶85} As of the date of our opinion, however, the Sixth Circuit has determined that Chapter 711 is unconstitutionally content-based. *See Norton Outdoor Advertising, Inc. v. Village of St. Bernard*, 99 F.4th 840, 851-852 (6th Cir. 2024). It is therefore not a foregone conclusion that Chapter 711 is good law. The parties are presently litigating whether any part of Chapter 711 can stand on its own severed from the offending definitions as part of Norton's motion for a preliminary injunction in its federal lawsuit. *See id.* at 852 (remanding case to district court on the question of severability). Should the federal court ultimately issue an injunction against Chapter 711, some other court will be tasked with determining what impact that decision has on the Village's notice of violation. And should the federal court uphold the portions of Chapter 711 upon which we rely, the outcome in this appeal is particularly unsatisfying, given that it is driven by our limited standard of review and choices made by Norton's counsel rather than the plain text of the Village's regulations.

{¶86} With respect for our limited role in the administrative appeals process, I join in this most unfortunate result.

Please note:
    The court has recorded its own entry this date.

---

[6] At oral argument, Norton's counsel expressed unfamiliarity with an *England* reservation.